**Edward C. CAREY, and New England Petroleum Corporation, Plaintiffs-Appellants,**

v.

**NATIONAL OIL CORPORATION and Libyan Arab Republic, Defendants-Appellees.**

**No. 350, Docket 78–7323.**

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1978.

Decided Jan. 24, 1979.

674

Samuel N. Greenspoon, New York City (Eaton, Van Winkle, Greenspoon & Grutman, New York City, John Van Voorhis, New York City, of counsel), for appellants.

John E. Sprizzo, New York City (Curtis, Mallet-Prevost, Colt & Mosle, New York City, Peter Fleming, Jr., Keith Highet, Robert S. Lipton, George Kahale, III, Joseph D. Pizzurro and Matias A. Vega, New York City, of counsel), for appellees.

Before KAUFMAN, Chief Judge, SMITH and VAN GRAAFEILAND, Circuit Judges.

PER CURIAM:

This is a contract case which involves several international transactions and attempts to bring into play issues of international concern. The case was dismissed on jurisdictional grounds in the United States District Court for the Southern District of New York, Kevin T. Duffy, *Judge.* For the reasons set out below, we affirm.

The facts may be stated briefly as follows:

Appellant New England Petroleum Corporation ("NEPCO") is a New York company which sells residual fuel oil in the eastern United States. One of the sources for this residual oil is a refinery company located in the Bahamas, the Grand Bahama Petroleum Company, Ltd. ("PETCO"). PETCO is a wholly-owned subsidiary of NEPCO. Appellant Carey is an assignee of PETCO.

In 1968, PETCO entered into a long-term contract to purchase crude oil from Chevron Oil Trading ("COT"), a branch of a petroleum company which held 50 per cent of an oil concession in Libya. The oil obtained under this contract was to be refined and sold to NEPCO. Libyan crude oil was particularly attractive to NEPCO because its low sulphur content aided compliance with United States air pollution standards.

In September, 1973 the Socialist People's Libyan Arab Jamahirya ("Libya") nationalized several foreign-owned oil concessions in that country, including that of the company of which COT was a part. This caused COT to suspend all crude oil deliveries to PETCO and to terminate its contract with PETCO.

In order to obtain the oil supplies it needed, PETCO entered into new contracts in September, 1973 with the National Oil Corporation ("NOC"), a company wholly owned by the Libyan government. These new contracts were at a substantially higher price than the canceled one with COT.

The following month, Libya imposed an embargo on oil exports to the United States, the Netherlands, and the Bahamas. Accordingly, NOC canceled its contracts with PETCO. World oil prices rose and available supplies declined. NOC then accepted bids on new contracts to supersede the ones effective until that time. In order to fulfill its contracts for the sale of refined oil in the United States, PETCO entered into a new contract with NOC for crude oil to be refined in Italy (during the embargo) and the Bahamas. In January, 1974 the contract was executed, calling for a price per barrel of oil more than three times the previous price.

In December, 1973 another subsidiary of NEPCO, Antco Shipping Company, agreed to charter two tankers owned by a Libyan government-owned entity. NEPCO claims that these were chartered at excessive rates as a condition of delivering oil to PETCO.

■ This suit attempts to recover damages for NOC's failure to deliver oil under the September, 1973 contract, for breaches of the 1974 contract, and for overcharges on the charter parties. The damages sought total approximately $1.6 billion. Because

we find that this court has no jurisdiction in this case, we do not reach the merits of these claims.

Foreign states[1] are immune from suit in the courts of the United States for many of their acts, and thus federal courts have no jurisdiction in disputes involving such public acts.[2] Specific exceptions to this general grant of immunity were carefully mapped out by Congress in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1330 and §§ 1602–11.

Appellants claim, most relevantly, that the events involved in this case come within the exception to immunity which allows U.S. jurisdiction where a claim is based on "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).[3] We find no direct effect in the United States here.

We assume that Congress chose the language in the act purposefully.[4] Section 1605(a)(2) speaks of acts which have a "direct" effect in the United States. The legislative history of this section[5] makes clear that it embodies the standard set out in *International Shoe Co. v. Washington*, 326

U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), that in order to satisfy due process requirements, a defendant over whom jurisdiction is to be exercised must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantive justice.'" That standard has not been met here.

PETCO is a Bahamian corporation. Though a subsidiary of NEPCO, it was a separate corporate entity, and we will not here "pierce the corporate veil" in favor of those who created that veil.[6] The cancellation of the contracts between NOC and PETCO, and the overcharge on the charters, had a direct effect on PETCO as a party to those contracts, but not in the United States. Similarly, while there was an admitted effect on NEPCO, an American company, that effect can only be deemed indirect, through NEPCO's relations with PETCO and Antco, whose dealings with NOC were entirely outside the United States.

At no time did NOC or Libya "purposely avail itself of the privilege" of conducting business in the United States.[7] The product which was destined for the United States, the refined oil, was a different substance than the crude oil sold by NOC to

1. National Oil Corporation ("NOC"), as well as Libya, is considered a "foreign state" under 28 U.S.C. § 1603(a) and (b)(2), since NOC is a corporation "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof."

2. *See* 28 U.S.C. § 1604; Legislative History of the Foreign Sovereign Immunities Act, 1976 *U.S.Code Cong. & Admin.News* 6605–07.

3. 28 U.S.C. § 1605 provides:
   (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
   (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States

4. *See Phillips v. United States*, 346 F.2d 999 (2d Cir. 1965).

5. 1976 *U.S.Code Cong. & Admin.News* 6612.

6. *See, e. g., Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437, 66 S.Ct. 247, 90 L.Ed. 181 (1946); *Commissioner of Internal Revenue v. Schaefer*, 240 F.2d 381, 383 (2d Cir. 1957); *Boise Cascade Corp. v. Wheeler*, 419 F.Supp. 98, 102 (S.D.N.Y.1976), *aff'd*, 556 F.2d 554 (2d Cir. 1977).

7. *E. g.*, there has been no evidence of "continuous and systematic" activities of NOC or Libya in the United States, corporate agents regularly doing business in this country, or any other way in which defendants have exercised the privileges or benefited from protections of conducting business in the United States. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 317–19, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

PETCO, so there was no real entering of the marketplace in the United States.[8]

The appellants claim that the Libyan government and NOC were aware that the refineries in the Bahamas were being used primarily to channel oil into the United States. Appellants also contend that the Libyan oil embargo was expressly aimed at affecting the United States. Even if these allegations are true, they do not fulfill the "minimum contacts" requirement of *International Shoe*, and thus cannot reach the level of "direct" effects described in the statute. The claims concerning the charter parties fail for the same reason.

The judgment of the district court dismissing for lack of jurisdiction is affirmed.

---

8. *See Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1144 (7th Cir. 1975) noting that jurisdiction could be found where defendant through an exclusive agreement for distribution in the United States had "inject[ed] its products into the . . . marketplace."