**GEMINI SHIPPING, INC., Plaintiff,**

v.

**FOREIGN TRADE ORGANIZATION FOR CHEMICALS AND FOODSTUFFS, and Syrian General Organization for Maritime Transport, Defendants.**

79 Civ. 1979 (MP).

United States District Court,
S. D. New York.

Sept. 15, 1980.

Healy & Baillie, New York City, for plaintiff by Howard M. McCormack, John P. O'Donnell, New York City.

Whitman & Ransom, New York City, for defendants by Michael S. Press, New York City.

OPINION

MILTON POLLACK, District Judge.

This is a suit for demurrage on a cargo of rice delivered by plaintiff from Sacramento, California to Lattakia, Syria. Delivery was completed on January 26, 1977. The charter party therefor was made in Hamburg, West Germany with the International Trading and Shipping Enterprises, S.A. (ITRASH) incorporated in Belgium which was engaged therefor by defendant Syrian General Organization for Maritime Transport (SYRIAMAR). The cargo was purchased in Syria through the United States Agricultural Attache in the American Embassy by defendant Foreign Trade Organization for Chemicals and Foodstuffs (TAFCO). Both defendants are owned by the Government of Syria.

The defendants have moved to dismiss the complaint against them on the ground that the Court lacks *in personam* jurisdiction. Rule 12(b)(2) Fed.R.Civ.P. The plaintiff has been permitted to conduct discovery to establish the contacts on which it seeks to base jurisdiction over the defendants. The plaintiff contends that the defendants are subject to *in personam* jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2) on the grounds that the action is based upon a commercial activity carried on in the United States by the foreign state; or in the alternative upon an act performed in the United States with a commercial activity of the foreign state elsewhere.

For reasons appearing hereafter, the motion of defendants should be granted and the amended complaint should be dismissed.

ITRASH agreed with SYRIAMAR to provide a vessel to transport a quantity of rice located in Sacramento, California to Syria. To perform this obligation ITRASH chartered the M.V. Costa Flora from the plaintiff Gemini, a New York corporation. Ninety percent of the freight charges be-

came due on completion of loading of the vessel and release of clean bills of lading. Payment was to be made by ITRASH to a Brussels bank.

A dispute arose between Gemini and ITRASH over the amount of the prepaid freight due and payable to Gemini. On September 1, 1976 Gemini gave notice to TAFCO as owner of the cargo by telex to Damascus, Syria that it was exercising its right of lien over the cargo. Gemini demanded a letter of credit for the full amount of freight and a separate letter of credit guaranteeing demurrage at $4,000 per day threatening to divert and sell the cargo if its demands were not met. TAFCO and SYRIAMAR telexed back from Damascus to Gemini protesting that they had, as cargo owners and contractors with ITRASH, fulfilled their obligations by payment of freights according to the requirements and consequently protested against any deviation of the vessel or threat to arrange for a lien on the cargo for causes for which they were not responsible. They stated that it was unreasonable to require them to pay freight twice; that Gemini's rights were only against ITRASH to whom the Syrian companies had telexed a request that ITRASH settle the matter with Gemini. They concluded hoping that the ship would continue her normal voyage and requesting to know the results of Gemini's contacts with ITRASH in Brussels. They added "we guarantee to pay you the demurrages at both ends".

Gemini was paid by ITRASH, declined to exercise its proposed lien over the cargo and permitted TAFCO to take delivery of the cargo free of any claim of lien in consideration for and in reliance upon the guarantee of payment of demurrages payable under the charter party.

Gemini presented a bill for demurrages of $378,957.64 which ITRASH refused to pay and Gemini thereupon sued ITRASH in England, and obtained a default judgment against the latter for a total of $422,606.15 which, however, remains unpaid.

This suit was filed in this Court on April 17, 1979 to enforce the demurrage claim against the two Syrian companies. To sustain its claim that the Court has personal jurisdiction over the defendants Gemini argues that TAFCO imports or otherwise receives foodstuffs or chemicals from the United States, either directly or indirectly, and that this satisfies *in personam* jurisdictional requirements; or in the alternative that the telex offering the guarantee of demurrage constituted an act performed in the United States in connection with a commercial activity of the foreign state elsewhere. 28 U.S.C. § 1605(a)(2). Neither ground stands up on analysis.

Following discovery permitted the plaintiff in connection with the motion to dismiss, it appears that neither defendant ever transacted or negotiated any business activity in the United States; that when TAFCO arranges to buy American foodstuffs for importation to Syria, it makes those arrangements through the United States Agricultural Attache at the United States Embassy in Damascus. None of TAFCO personnel ever travelled to the United States to negotiate or conclude an agreement of any kind. The papers before the Court show that there was no purposeful activity of the defendants in the United States constituting the doing of business. Moreover, there is no nexus between such activities as may be ascribed to defendants here and the telexed agreement to guarantee payment of demurrage incurred in Syria. Neither defendant is represented here by a general agent. The defendant negotiated for the cargo in Syria, not the United States. The particular cargo was purchased under a contract that provided that any disputes thereunder should be determined in Syria under Syrian law. The transportation contract entered into by the plaintiff with ITRASH was not made with the defendants—they were not parties thereto. Disputes under that contract were to be resolved in England.

It recently has been held by the Ninth Circuit in *Thomas P. Gonzalez Corp. v. Consejo Nacional de Costa Rica*, 614 F.2d 1247 (9th Cir. 1980) that the use of the mails, telephone or other international communi-

cations simply do not qualify as purposeful activity invoking the benefits and protection of the state. Further, jurisdiction could not be asserted over a non–resident solely because he executed a guarantee agreement regarding payment of money owing to an American corporation. *See also East Europe Domestic International Sales Corp. v. Terra*, 467 F.Supp. 383 (S.D. N.Y.1979) in which Judge Cooper found he did not have jurisdiction over a defendant whose "sole contacts with the United States in the course of the transaction in dispute are the telexes which comprise the negotiations between [defendant] and plaintiff." In that case, the Court rejected the argument that an act has a "direct effect" in New York merely because it causes injury to a corporation domiciled in New York.

In *Carey v. National Oil Corp.*, 592 F.2d 673 (2d Cir. 1979) it was ruled that the "minimum contacts" doctrine is embodied in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1605(a)(2):

in order to satisfy due process requirements, a defendant over whom jurisdiction is to be exercised must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend" traditional notions of fair play and substantial justice. *Id.* at 676. (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

The standard under the Act cited calls for evidence of continuous and systematic activities in the United States; or, corporate agents regularly doing business in the United States; or, evidence showing that defendants have exercised the privileges or benefitted from protections of conducting business in the United States.

In *Verlinden B.V. v. Central Bank of Nigeria*, 488 F.Supp. 1284 (S.D.N.Y.1980), Verlinden B.V., a Dutch corporation with its principal offices in Amsterdam, commenced an action for anticipatory breach of an irrevocable documentary letter of credit established in its favor by the Central Bank of Nigeria. The Central Bank of the Federal Republic of Nigeria is an agency or instrumentality of a foreign state within the meaning of the "Immunities Act" of 1976 referred to above. Judge Weinfeld wrote:

When jurisdiction is alleged under any of the Act's three "commercial activities" exceptions, the plaintiff's cause of action must be "based upon" the commercial activity specifically enumerated in the exception. At least with respect to the first two exceptions, we take this to mean that there must be a close connection between the cause of action asserted and the jurisdictional facts upon which it is based. Other contacts between a defendant and a forum state unrelated to a particular cause of action but that might justify the assertion of jurisdiction under the theories of "doing business", or even of "transacting business," do not satisfy the requirements of the Immunities Act. Rather, the focus must be on the nexus between the forum and the particular facts giving rise to the cause of action. *Id.* 1295–96.

Plainly, there is no nexus between the demurrages and the guarantee thereof and such activities as the plaintiff would ascribe to the defendants occurring in the United States.

Accordingly, since none of the exceptions to the Immunities Act is applicable here, the motion of the defendants to dismiss the amended complaint for lack of personal jurisdiction under the Foreign Sovereign Immunities Act is granted.

SO ORDERED.