James K. GILSON, Appellant,

v.

The REPUBLIC OF IRELAND, Gaeltarra Eireann, an instrumentality of the Republic of Ireland, Industrial Development Division, Furbo, et al.

No. 81–1815.

United States Court of Appeals, District of Columbia Circuit.

Argued 26 March 1982.

Decided 16 July 1982.

Joseph H. Sharlitt, Washington, D. C., with whom Harvey A. Levin and Sheldon Z. Kaplan, Washington, D. C., were on the brief, for appellant.

William A. Bradford, Jr., Washington, D. C., with whom Edward A. McDermott, Washington, D. C., was on the brief, for appellee The Republic of Ireland.

Robert B. Davidson, New York City, with whom Jack P. Janetatos, Washington, D. C., was on the brief, for appellees, Gaeltarra Eireann, et al.

Before WRIGHT and WILKEY, Circuit Judges, and CELEBREZZE,* Senior Circuit Judge for the Sixth Circuit.

WILKEY, Circuit Judge:

Plaintiff James K. Gilson brought suit against four defendants—the Republic of Ireland and three Irish corporations—for a variety of alleged commercial misdeeds. This action was brought pursuant to, and plaintiff argues that jurisdiction is proper under, the Foreign Sovereign Immunities Act of 1976.[1] The district court, 517 F.Supp. 477, dismissed the complaint, however, since it found that it lacked subject matter jurisdiction over three of the four defendants, and personal jurisdiction over the fourth.[2]

We affirm the district court's dismissal with respect to four of the six counts brought by plaintiff, but in doing so rely on the statute of limitations, not FSIA.[3] With respect to the remaining two counts we

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Pub.L.No. 94–583, 90 Stat. 2891 (codified at 28 U.S.C. §§ 1330, 1332(a)(2), (3), (4), 1391(f), 1441(d), 1602–1611 (1976) [hereinafter cited as "FSIA" or "the Act"]. The Act went into effect 19 January 1977.

2. No. 79–2647, memorandum opinion (mem. op.) and order (D.D.C. 29 June 1981), Joint Appendix (J.A.) at 224–37.

3. The statute of limitations issue was expressly not reached by the district court, id. at 2, J.A. at 225, but all parties briefed and argued the issue on appeal and, accordingly, we believe it proper to consider it now.

think that, under a generous reading of the facts as alleged in the complaint, both subject matter jurisdiction and personal jurisdiction properly lie in this court.[4] Since so far the district court has undertaken only limited fact-finding on its own, on these two counts we reverse the district court's decision and remand for further proceedings.

## I. FACTS

Plaintiff James K. Gilson is a mechanical engineer, an American citizen, and a resident of Massachusetts. He alleges that defendants Gaeltarra Eireann ("GE") and Industrial Development Authority of Ireland ("IDA")—both instrumentalities of the government of the Republic of Ireland, organized under Irish law—induced him to enter into a commercial venture for the development of quartz crystals in Ireland, to move himself, his family, equipment, and technology to Ireland, and to reveal to defendants certain proprietary information. The complaint further contends that subsequent to the plaintiff's move to Ireland, defendant GE breached its contract with plaintiff, turned over to defendant Leictron Teoranta ("Leictron" or "LT")—a third Irish corporation now wholly owned by defendant GE—his patent rights and proprietary information, and along with LT converted his equipment to its own use. Plain-

tiff also alleges interference by GE and LT in his ongoing contractual relations with another Irish corporation. Finally, the complaint alleges that "Defendant IDA, acting alone and then jointly with Defendant GE, were agents of the Defendant Republic [of Ireland] at all times pertinent to this complaint," and that the acts by GE, IDA, and LT of which plaintiff complains were performed "within the scope of [their] employment by Defendant Republic."[5] Plaintiff seeks damages in an amount totalling three million dollars, in addition to an accounting by GE and LT for all revenues inured to them by virtue of their wrongful conduct.

## II. ANALYSIS

Plaintiff lists six causes of action in his amended complaint.[6] We find that all but two are barred by that statute of limitations. For the two remaining, however, we think that under the facts alleged subject matter and personal jurisdiction exist, and accordingly reverse their dismissal and remand to the district court for further proceedings.

### A. *Effect of the Statute of Limitations*

■ In our case the relevant statute of limitations would bar an action on matters arising more than three years before the complaint was filed.[7] In his motion for

---

4. Because the district court's analysis proceeded defendant-by-defendant, rather than count-by-count, it is unclear whether and when it found subject matter jurisdiction or personal jurisdiction, or both, lacking. In any event, for the reasons discussed below at pp. 1024–1029, we think both are sufficiently alleged to make dismissal improper at this stage in the proceedings.

5. Amended Complaint ¶¶ 13, 19, J.A. 56, 64; *see id.* ¶¶ 23–24, J.A. 61–62.

6. They are listed on pages 12–15 of the Amended Complaint, J.A. at 61–64; *Count One*: Deceit by Defendants Republic of Ireland, GE and IDA; *Count Two*: Breach of Contract by Defendant GE; *Count Three*: Accounting by Defendant GE for Use of Patent Rights and Proprietary Information; *Count Four*: Accounting by Leictron for Unlawful Use of Patent Rights and Proprietary Information; *Count Five*: Conversion by Defendants Republic, GE and

Leictron; and *Count Six*: Interference with Advantageous Relations by Defendants Leictron, GE, and Republic.

7. The relevant statute of limitations in this action reads:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> . . . . .
>
> (3) for the recovery of damages for an injury to real or personal property—*3 years*;
>
> . . . . .
>
> (7) on a simple contract, express or implicit—*3 years*;
>
> (8) for which a limitation is not otherwise specifically prescribed—*3 years* . . . .

12 D.C.Code Ann. § 12–301 (1981) (emphasis added). The applicable statute of limitations is determined by the local law of the forum. *See*

partial summary judgment plaintiff stated in the first paragraph of the required Statement of Material Facts As to Which There is No Genuine Issue: "The events in this case on which the various Counts rest (within the exception of Counts 3 and 4) occurred on or before March of 1975." Since the original complaint was not filed until 3 October 1979—or over four and a half years later—it would appear that, except for counts 3 and 4, plaintiff is too late.[8]

Plaintiff argues that because prior to FSIA—which became effective on 19 January 1977[9]—he could not have *successfully* maintained an action against defendants, the statute was tolled until that time and that therefore his filing in October 1979, a mere two and a half years later, was timely.

We reject this argument. While FSIA was by all accounts an important piece of legislation, it is a great exaggeration to say that plaintiff was without remedy before it became effective. Plaintiff asserts that "prior to January 19, 1977, the restrictive principle of sovereign immunity [allowing foreign state entities to be sued for actions undertaken by them in a commercial capacity] . . . was not yet the law of our land."[10] But, as the House Report on the Act points out, "This principle was adopted by the Department of State in 1952 and has been followed by the courts and by the executive branch ever since."[11] It may be true, as plaintiff argues, that the Act curtailed the possibility of the Department of State intervening here with its own plea of sovereign immunity for defendants, removed cer-

tain procedural obstacles, and increased the property available to plaintiff for judgment. But to say that any action was effectively barred before FSIA is not true. The passage of any statute will have some effect on the likelihood of success of many actions; we must require the effect to be substantial or the exception plaintiff invokes will swallow the rule. We do not think that the passage of FSIA changed plaintiff's position so much that it was only at that time that "the right to maintain the action accrue[d]."[12]

We therefore conclude that the statute of limitations bars all but counts 3 and 4 of plaintiff's complaint.[13]

## B. *FSIA Jurisdiction*

Count 3 is labelled "Accounting by Defendant GE for Use of Patent Rights and Proprietary Information," and count 4 is "Accounting by Defendant Leictron for Unlawful Use of Patent Rights and Proprietary Information."[14] In them plaintiff alleges that GE—in contravention of U. S. and Irish law, and without plaintiff's consent—turned over to Leictron the use of patent rights and proprietary information owned by plaintiff, and that Leictron used and infringed these rights and information. Leictron is also accused of wrongfully converting and using equipment belonging to plaintiff, and of wrongfully manufacturing and selling quartz crystals with personnel trained by plaintiff. Defendant Leictron is said to have "benefitted from the continuing and substantial profits generated by its

---

*Kaplan v. Manhattan Life Ins. Co. of N. Y.*, 109 F.2d 463, 465–66 (D.C.Cir.1939) (citing *Townsend v. Jemison*, 50 U.S. (9 How.) 407, 13 L.Ed. 194 (1850); *McElmoyle v. Cohen*, 38 U.S. (13 Pet.) 312, 10 L.Ed. 177 (1839); *Wells v. Alropa Corp.*, 82 F.2d 887, 888 (D.C.Cir.1936)). *See also Hodge v. Southern Railway Co.*, 415 A.2d 543 (D.C.App.1980); *May Dep't Stores Co. v. Devercelli*, 314 A.2d 767, 773 (D.C.App.1973).

**8.** We note that recovery may be limited by the statute of limitations under counts 3 and 4, since some of the harm alleged therein precedes by more than three years the filing of the complaint.

**9.** *See* note 1 *supra.*

**10.** Appellant's reply brief at 13.

**11.** H.R.Rep.No.94–1487, 94th Cong., 2d Sess. 7 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6604, 6605. *See* Restatement (Revised) of Foreign Relations Law of the United States 173 (Tent. Draft No. 2, 1981).

**12.** D.C.Code Ann. § 12–301 (1981).

**13.** The issue of whether the dismissal of four of the six counts makes appropriate the dismissal of one or more defendants is discussed at pp. 1029–1030 *infra.*

**14.** Counts 3 and 4 are set out in the Amended Complaint at p. 14, J.A. at 63.

usurpation (with the active collusion of Defendant GE) of the patent rights, proprietary information and equipment owned by Plaintiff." [15]

In a word, plaintiff accuses GE and Leictron of stealing his expertise and equipment and making money from them.

In determining whether under these alleged circumstances a federal court may properly exercise jurisdiction under FSIA, we must undertake a bifurcated analysis, asking first whether a United States court has *subject matter jurisdiction*, and second whether it can exercise *personal jurisdiction* over the defendants.[16]

Before we ask these questions, however, we should make clear the effect of our answers. We are not making a final factual determination of whether jurisdiction exists, on either count, for any defendant. Only the factual determinations which the district court may undertake later can determine this, one way or another. Our conclusion that the district court's dismissal for lack of jurisdiction was improper is based on our finding that the facts *as alleged* —and generously interpreted—make a dismissal at least premature in light of the dearth of fact-finding done by the district court thus far. Further fact-finding by the district court, which it should make explicit, may yet render dismissal proper.[17]

### 1. *Subject matter jurisdiction*

■ The existence vel non of subject matter jurisdiction will be determined by sections 1604 and 1605 of the Act.[18] Section 1604 states the general FSIA rule that "a foreign state shall be immune from the jurisdiction of the courts of the United States," and section 1605 then carves out exceptions to this general rule. It is clear that each of the four defendants is a "foreign state" within the meaning of section 1604,[19] so the question is whether any of the exceptions in section 1605 apply. The relevant exceptions are:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . . .

(2) in which the action is based [clause 1] upon a *commercial activity carried on in the United States* by the foreign state; or [clause 2] upon *an act performed in the United States in connection with a commercial activity of the foreign state elsewhere*; or [clause 3] upon *an act outside the territory of*

---

**15.** *Id.*

**16.** *See, e.g., Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982); *Gemini Shipping, Inc. v. Foreign Trade Org. for Chem. & Foodstuffs,* 647 F.2d 317 (2d Cir. 1981); *Verlinden B. V. v. Central Bank of Nigeria,* 647 F.2d 320 (2d Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982).

We note here that "the activities of an agent may be attributed to the principal for jurisdictional purposes . . . ." *East Europe Domestic Int'l Sales Corp. v. Terra,* 467 F.Supp. 383, 390 (S.D.N.Y.), *aff'd mem.,* 610 F.2d 806 (2d Cir. 1979). *See Bigelow-Sanford, Inc. v. Gunny Corp.,* 649 F.2d 1060, 1063–64 (5th Cir. 1981); *Gold Kist Inc. v. Baskin-Robbins Ice Cream Co.,* 623 F.2d 375, 380 (5th Cir. 1980); *Biltmoor Moving & Storage Co. v. Shell Oil Co.,* 606 F.2d 202, 208 (7th Cir. 1979). *See also* Restatement (Revised) of Foreign Relations Law of the United States § 452 (Tent. Draft No. 2, 1981). Thus, the district court's ultimate determination of whether jurisdiction is proper may

hinge on whether the required agency existed, and for whom, with respect to counts 3 and 4. The uncertainty of the relationships among the various defendants is one reason for our decision that dismissal is at this time premature. *See* part III, "Dismissal With Respect to Certain Defendants," pp. 1029–1030 *infra.*

**17.** *See Exchange Nat'l Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir. 1976). *See also Gordon v. National Youth Work Alliance,* 675 F.2d 356 (D.C.Cir.1982); Restatement (Revised) of Foreign Relations Law of the United States 175 (Tent. Draft No. 2, 1981).

**18.** 28 U.S.C. §§ 1604, 1605 (1976).

**19.** *Id.* § 1603 "Definitions." The district court held that "all four defendants in this case are foreign states" within the meaning of FSIA, and that, indeed, "[i]t is undisputed between the parties that all defendants are foreign states within the meaning of section 1603." Mem. op. at 4, J.A. at 227 (emphasis added).

*the United States* in connection with a commercial activity of the foreign state elsewhere and that act causes a *direct effect* in the United States ....[20]

Recall that in counts 3 and 4 plaintiff accuses GE and Leictron of stealing his expertise, patent rights, and equipment and making money from them, and that at the time this happened all parties were in Ireland. But the complaint alleges an unbroken chain of events beginning when plaintiff contracted with defendant GE in the United States, with the participation of defendant IDA's New York office, and involving the active collusion of all defendants to entice plaintiff to leave the United States for Ireland. Does this sequence of events yield an action within the exceptions enumerated in section 1605 to section 1604's general rule of immunity?

We believe that, if all this happened in the way plaintiff alleges, it does. In particular, we think the case would fall within clause 2 of section 1605(a)(2), that we would have before us an action based "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere ...."[21] The "act per-

formed in the United States" is the enticement, the "commercial activity of the foreign state elsewhere" is the quartz crystal business in which plaintiff and defendants were involved.[22] We note that the district court also recognized the possible applicability of clause 2.[23]

The legislative history of the clause confirms our belief that it would apply. The House Report stated that the clause "looks to conduct of the foreign state in the United States which relates either to a regular course of commercial conduct elsewhere or to a particular commercial transaction *concluded or carried out in part elsewhere.*"[24] An "[e]xample[ ] of this type of situation" given by the Report appears to be precisely what is alleged here: *"a representation in the United States by an agent of a foreign state that leads to an action for restitution based on unjust enrichment ...."*[25]

While it is unclear whether the district court failed to find subject matter jurisdiction for these counts,[26] we should note here one reservation about the district court's FSIA determinations generally. Our criticism is prompted not by any major analyti-

---

**20.** *Id.* § 1605 (emphasis added). The district court apparently accepted plaintiff's assertion that the acts involved were "commercial," and our disposition of the case today does not call for review of this issue.

**21.** Thus, we do not reach the issue of whether plaintiff satisfies either of the other two clauses.

**22.** We are assuming here that plaintiff will be able to demonstrate that the required nexus exists as to all defendants between their commercial activity in the United States and the subsequent wrong. Section 1605's "based upon" standard is satisfied if plaintiff can show a direct causal connection between his enticement in the United States and the misappropriations in Ireland giving rise to his claims for an accounting, or if he can show that enticement is an element of the cause of action under whatever law governs his claims. *See Velidor v. L/P/G Benghazi,* 653 F.2d 812, 820 (3d Cir. 1981), *petition for cert. dismissed,* —— U.S. — - --, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982); *Sugarman v. Aeromexico, Inc.,* 626 F.2d 270, 272–73 (3d Cir. 1980). If plaintiff cannot show the requisite nexus between defendants' acts, or acts attributable to defendants, in the United States and his cause of action, then contact

with the United States—for both subject matter and personal jurisdiction purposes—will be, perhaps decisively, attenuated.

It might be objected that, in a narrow sense, plaintiff's suit is "based upon" only the conversion of his equipment, the use of his expertise, and so forth—not the enticement. But the examples given in the legislative history in the next paragraph in the text belie this interpretation, and we conclude—as the Second Circuit did in rejecting a similarly narrow construction of "based upon" in a clause 1 context—that "the drafters of the FSIA intended no such niggardly construction." *Gemini Shipping, Inc. v. Foreign Trade Org. for Chem. & Footstuffs,* 647 F.2d 317, 319 (2d Cir. 1981).

**23.** Mem. op. at 11, J.A. at 234. It is unclear, however, which count the district court was considering in this finding. *Cf. id.* at 8, J.A. at 231 (clause 2 rejected with respect to IDA).

**24.** H.R.Rep.No.1487, 94th Cong., 2d Sess. 19 (1976), U.S.Code Cong. & Admin.News 1976, p. 6617 (emphasis added).

**25.** *Id.* (emphasis added).

**26.** *See* note 4 *supra.*

cal error of the district court;[27] rather, it is attributable to our more open-textured reading of the Act. The three clauses which constitute section 1605(a)(2) are intended to carve out a commercial act exception to the general rule of sovereign immunity: in the statute's *"Findings and declaration of purpose"* it is asserted that "states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned . . . ."[28] We think that it ought to be difficult for defendants engaged in commercial activity with substantial American contact—as defendants were alleged to have been here—to invoke successfully sovereign immunity when sued for underlying commercial misdeeds. This is especially so in view of the fact that FSIA was written in great measure to ensure that "our citizens will have access to the courts in order to resolve ordinary legal disputes."[29] We do not say that plaintiff will win, but neither can we say that he has failed even to allege a claim within the Act.

Therefore, we find it improper to dismiss for lack of subject matter jurisdiction under the facts alleged in counts 3 and 4. Also, we vacate the district court's application and exposition of FSIA.

### 2. *Personal jurisdiction*

There remains a final problem: "Subsequent to the determination of subject matter jurisdiction [under FSIA] is the issue of *personal jurisdiction.*"[30] It appears that, statutorily, personal jurisdiction exists so long as subject matter jurisdiction exists and service has been properly made under section 1608 of FSIA.[31] We have found the former, and the latter is not challenged.

■ However, a statute cannot grant personal jurisdiction where the Constitution forbids it, and the Supreme Court has held repeatedly that certain "minimum contacts" must exist between the person and the jurisdiction to be consistent with the Due Process Clause of the Fifth Amendment. We must determine whether sufficient minimum contacts are alleged here.

■ We believe they are.[32] Under the facts alleged in the complaint, defendants entered into contract with plaintiff in the United States, using U. S. mails, telephones, and telegraph,[33] with the purpose of enticing plaintiff to come to Ireland where his expertise, patent rights, and equipment could be misappropriated. We note that, under the facts alleged, at least some of the defendants maintain offices in the United States and have availed themselves of the privileges of American law, that litigation in the United States was foreseeable to them, and that trying the suit here should not be an undue inconvenience.[34] The Supreme Court has stressed "the *plaintiff's* interest in obtaining *convenient and effec-*

---

**27.** There is one exception: its interpretation of 28 U.S.C. § 1605(a)(5)(B) (1976) seems incorrect. The provision does *not* limit *id.* § 1605(a)(2). *See* mem. op. at 13, J.A. at 236.

**28.** 28 U.S.C. § 1602 (1976).

**29.** H.R.Rep.No. 1487, 94th Cong., 2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 6605.

**30.** *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 313 (2d Cir. 1981) (emphasis added), *cert. denied,* — U.S. - - --, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

**31.** 28 U.S.C. § 1608 (1976). *See Texas Trading,* 647 F.2d at 308. The district court today also adopted this analysis. Mem. op. at 3, J.A. at 226.

**32.** Again, it is unclear whether the district court found personal jurisdiction lacking on

these counts, *see* note 4 *supra*; it reached the personal jurisdiction issue only with respect to defendant GE, and did not specify whether its finding of no personal jurisdiction there was limited to particular counts.

**33.** *See* mem. op. at 11, J.A. at 234.

**34.** *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Kulko v. California Superior Court,* 436 U.S. 84, 97–98, 98 S.Ct. 1690, 1699–1700, 56 L.Ed.2d 132 (1978); *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945).

*tive relief."* [35] Moreover, the Court has in the past considered the forum's "manifest interest in providing effective means of redress for its residents," [36] and here Congress passed FSIA to ensure specifically that "our citizens will have access to the counts in order to resolve ordinary legal disputes." [37] If plaintiff can show that his allegations have substance and that defendants in fact acted in concert, so that the contacts of one may be attributed to the others, then this is more than enough to establish that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " [38]

## III. DISMISSAL WITH RESPECT TO CERTAIN DEFENDANTS

The question arises which, if any, of the defendants should have plaintiff's action dismissed with respect to them, since only GE and Leictron are named in counts 3 and 4. (We note, too, that in the remedies requested for counts 3 and 4 only GE and Leictron, respectively, are asked to make an accounting.) [39] The counterargument is that such a dismissal would be unduly formalistic since the complaint makes clear that all four defendants are alleged to have been continuously involved in the counts brought.[40] At this point a second argument comes into play, that the district court made specific factual findings that fatally discredit this theory. In particular, in one of the few factual findings it made, the district court apparently found that IDA was not an agent of GE. This would seem to sever a tie enabling it to be drawn into counts 3 and 4.[41]

The arguments for dismissal are not without force, but we think it best to leave any dismissing to the district court on remand. We do so simply because the determinations of who is and is not an agent of whom will be in great part factual, which we can resolve only at great risk. It is unclear to us what the Republic's role was, for instance, and the district court made no factual determinations in its dismissal of the Republic.[42] Although we agree with the Second Circuit that the legislative history of FSIA establishes that Congress did not intend "to cause the courts willy-nilly to pierce the corporate veils of foreign entities," [43] it is apparent from the filings and oral argument that there is an unresolved difference of opinion in this case among the parties as to the directness of the Republic's involvement. With respect to IDA, while there was apparently a finding that it was not *GE's* agent, it might still have been, for instance, an agent for *the Republic.*[44]

If, however, the further development of the facts or clarification and expansion of the remaining counts—which the district court may call for after today's opinion—reveals that one or more defendants were insufficiently involved, the district court should not hesitate to dismiss plaintiff's action against them. Furthermore, insufficient involvement on the part of one or more defendants may make subject matter or personal jurisdiction improper as to others. An agent's actions may provide the basis for jurisdiction over the principal,[45] but jurisdiction cannot be maintained if the

---

**35.** *World-Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564 (emphasis added) (citing *Kulko,* 436 U.S. at 92, 98 S.Ct. at 1697).

**36.** *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

**37.** H.R.Rep.No.1487, 94th Cong., 2d Sess. 6 (1976), U.S.Code Cong. & Admin.News 1976, p. 6605.

**38.** *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citing *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)).

**39.** Amended Complaint at 14, J.A. at 63.

**40.** *Id.* at, *e.g.,* 3–5, 7, 12–13, J.A. at 52–54, 56, 61–63.

**41.** Mem. op. at 7–8, J.A. at 230–31.

**42.** *Id.* at 12–13, J.A. at 235–36.

**43.** *Banco Para el Commercio Exterior de Cuba v. First Nat'l City Bank,* 658 F.2d 913, 919 (2d Cir. 1981).

**44.** *See* Amended Complaint at 3–5, 7, 12–13, J.A. at 52–54, 56, 61–63.

**45.** *See* note 16 *supra.*

agent's actions are not related to the substance of plaintiff's cause of action.

### IV. CONCLUSION

Except for counts 3 and 4, plaintiff's claims are barred by the statute of limitations. As for them, we think subject matter and personal jurisdiction may exist under the facts alleged, and accordingly we remand to the district court for further proceedings.

*So ordered.*