**FOREMOST–McKESSON INC., et al., Plaintiffs,**

**v.**

**The ISLAMIC REPUBLIC OF IRAN, et al., Defendants.**

**Civ. A. No. 82–0220.**

United States District Court,
District of Columbia.

March 7, 1991.

Mark R. Joelson, Mark N. Bravin, Morgan, Lewis & Bockius, Washington, D.C., for plaintiffs.

Thomas G. Corcoran, Jr., Berliner, Corcoran & Rowe, Washington, D.C., for defendants.

## MEMORANDUM OPINION

FLANNERY, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Leave to Amend the Complaint and Defendants' Motion for Leave to File Discovery Concerning Personal Jurisdiction. Upon consideration of plaintiffs' motion, defendants' opposition thereto, plaintiffs' reply, defendants' motion, plaintiffs' reply thereto, defendants' reply, argument in open court, the entire record herein, and for the reasons stated in this memorandum, this Court will grant plaintiffs' Motion for Leave to Amend the Complaint and deny defendants' Motion for Leave to File Discovery Concerning Personal Jurisdiction.

### I.

Foremost–McKesson ("McKesson") is suing the Islamic Republic of Iran ("Iran") for losses connected with McKesson's partial ownership interest in Sherkat Sahami Labiniat Pasteurize Pak (hereafter "Pak Dairy").[1] Specifically, McKesson alleges that Iran illegally expropriated McKesson's equity interest in Pak Dairy and that Iran owes McKesson cash and stock dividends

---

**1.** For a more detailed history of the case, *see* *Foremost–McKesson, Inc. v. Islamic Republic of* *Iran,* 905 F.2d 438, 440–42 (D.C.Cir.1990).

up to the judicially determined date of expropriation.

McKesson and Overseas Private Investment Corporation ("OPIC") brought the action in 1982. The action was stayed while plaintiffs presented their claims to the Iran–United States Claims Tribunal. The Tribunal ruled in 1986 that no expropriation had occurred by January 19, 1981 (the last date of the Tribunal's jurisdiction). The Tribunal also ruled that Iran owed McKesson damages for failure to deliver cash and stock dividends. In April 1988, McKesson filed a Motion for Partial Summary Judgment, thereby reactivating this suit. This Court held that motion in abeyance. In response, Iran filed a motion to strike its 1982 answer, and a motion to stay proceedings. Both of Iran's motions were denied. Iran then filed motions to amend its answer and to dismiss for lack of jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). The Court allowed Iran to amend its answer, but denied Iran's motion to dismiss. Iran then filed an interlocutory appeal.

On June 15, 1990, the Court of Appeals affirmed in part and remanded in part. *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438 (D.C.Cir.1990). The Circuit affirmed all of this Court's holdings, except one. The Circuit remanded on the issue of "whether the government of Iran exercised the necessary degree of control over the other defendants to create a principal/agent relationship and thus permit th[e district] court to deem Iran responsible for their actions." *Id.* at 445. (quoting this Court's November 8, 1988 memorandum opinion). The Circuit agreed that this Court had correctly framed the issue. The Circuit, however, remanded the case back to this court to make further factual determinations regarding Iran's control over the other defendants.

Following the remand, McKesson filed a Motion for Leave to Amend the Complaint on December 13, 1990. Iran filed its opposition on January 10, 1991, and McKesson replied on January 25, 1991.

Iran filed a Motion for Leave to File Discovery Concerning Personal Jurisdiction on January 11, 1991. McKesson filed its opposition on January 25, 1991.

## II.

McKesson moves to amend its complaint to include pertinent events that have occurred since the original complaint was filed in 1982. Iran opposes two of the amendments suggested by McKesson: 1) an amendment which would increase the amount of damages claimed by plaintiffs to cover McKesson's full 31% percent ownership interest in Pak Dairy, whereas the original complaint sought recovery for only 19.84% percent of McKesson's ownership interest (that portion of the equity in Pak Dairy in which both McKesson and its co-plaintiff, OPIC, have an interest); and 2) an amendment that would state another cause of action (based on the same facts) alleging that Iran tortiously interfered with McKesson's rights and interests as a minority shareholder in Pak Dairy. Iran opposes these two amendments on the grounds of: 1) undue delay; 2) prejudice; and 3) as to the tortious interference claim, futility of the proposed amendment.

■ Fed.R.Civ.R. 15(a) states that leave to amend a complaint "shall be freely given when justice so requires." *Id.* The Supreme Court has stated

> In the absence of any ... reason—such as undue delay, ... undue prejudice, .. [or] futility of the amendment ... the leave [to Amend] sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Moreover, "it is common ground that Rule 15 embodies a generally favorable policy toward amendments." *Davis v. Liberty Mutual Ins. Co.*, 871 F.2d 1134, 1136–37 (D.C.Cir. 1989). The standard of review on appeal is "abuse of discretion." *Id.* at 1136.

## A.

■ The delay in amending the complaint in this case has been substantial. However, the delay is neither entirely, nor principally, attributable to McKesson.

Most of the delay in this case has been occasioned by the interlocutory appeal and the Claims Tribunal process. Under these circumstances, the Court cannot find that McKesson's delay in requesting leave to amend the complaint was undue or unreasonable.

Furthermore, Iran is not in a good position to claim undue delay, as it did not move to amend its answer until 1988, and still has not responded to McKesson's 1988 Motion for Partial Summary Judgment. This court granted Iran's motion for leave to amend its answer because it was in the interest of justice. Similarly, this court will, in the interest of justice, grant McKesson's motion for leave to amend its answer.

### B.

 Iran claims that it will be prejudiced by these amendments because one of its defenses to subject matter jurisdiction will be less effective if the amendments are allowed. Iran notes that this Court can only assert subject matter jurisdiction over Iran if McKesson shows that Iran's actions have caused a "direct effect" in the United States. 28 U.S.C. § 1605(a)(2). Iran argues that amending the complaint will prejudice Iran because it will make it easier for McKesson to recover because McKesson will no longer have to show a direct effect on co-plaintiff OPIC.[2]

It seems, however, that Iran's definition of prejudice is not in keeping with the legally accepted definition of prejudice. To show prejudice, Iran "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Cuffy v. Getty Refining & Marketing Co.*, 648 F.Supp. 802, 807 (D.Del.1986) (quoting *Heyl & Patterson Int'l v. F.D. Rich Housing*, 663 F.2d 419, 426 (3rd Cir.1981), *cert denied* 455 U.S. 1018, 102 S.Ct. 1714, 72 L.Ed.2d 136)). Defendants face no such problems. The amendments are based on the same set of occurrences as the original complaint. All documents and information relating to the original complaint will also relate to the

amended complaint. Iran will have the same opportunity to present facts and evidence after the amendment as it did before the amendment. Iran's claim that one of its defenses will not work as effectively as it would have prior to the amendment is simply not enough to warrant denial of the amendment. As this court stated previously

> the opposing party must demonstrate unfairness in a procedural or timing sense—that at this stage of the litigation they are prevented in some way from asserting a response to the amendment that they otherwise would have used if the amendment had been timely.

*Foremost–McKesson v. Islamic Rep. Iran,* Civ. No. 82–220 at 11–12, 1988 WL 122568 (D.D.C. November 8, 1988) (J. Flannery). Iran cannot demonstrate any unfairness in a procedural or timing sense. Therefore, Iran is not prejudiced and the amendment will be allowed.

### C.

 Iran also contends that the tortious interference claim is "futile" under 28 U.S.C. § 1605(a)(5)(B). This is a misreading of the statute. Section 1605(a)(5)(B) states

> (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States **in any case—**
>
> **(5) not otherwise encompassed in paragraph (2)**, above in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious acts or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment; **except this paragraph shall not apply to—**
>
> **(B) any claim arising out of ... interference with contract rights.**

*Id.* (emphasis added). The clear language of the statute declares that section

---

**2.** It must be noted that the court of appeals has already stated that "the effects alleged [in this

case] were foreseeable, substantial and direct." *Foremost–McKesson,* 905 F.2d at 451.

1605(a)(5) does not apply to section 1605(a)(2).[3] Therefore, the exception to section 1605(a)(5) contained in section 1605(a)(5)(B), for claims arising out of interference with contract rights, does not apply to claims brought under § 1605(a)(2). *See United Euram Corp. v. Union of Soviet Socialist Republics,* 461 F.Supp. 609, 612 (S.D.N.Y.1978). The Court, then, will not prohibit the proposed amendment on the ground of futility.

### III.

■ Iran also asks this court to allow Iran to file discovery concerning personal jurisdiction.[4] Iran hopes the requested discovery will show that minimum contacts do not exist between Iran and the forum. Iran first argues that this court should ignore the Court of Appeals because "we, [Iran], respectfully disagree with the Court of Appeals' analysis and conclusion that Iran waived its Constitutional right not to be subjected to the personal jurisdiction of this Court." Plaintiffs' Memorandum in Support of Motion for Leave To File Discovery Concerning Personal Jurisdiction. This Court, however, is bound by the Circuit's holding that "Iran may not now raise the separate constitutional ground for a claim of lack of *in personam* jurisdiction." *Foremost–McKesson,* 905 F.2d at 453. Therefore, the Court will decline Iran's invitation to reexamine the issue of constitutional personal jurisdiction.

Iran also insists that the minimum contacts standard is embodied in the statutory provisions of the FSIA regarding personal jurisdiction. *See* 28 U.S.C §§ 1330(a)-(b), 1608. Therefore, Iran argues that its discovery request should be allowed so that Iran can demonstrate that statutorily required minimum contacts are not present in this case.[5] Iran argues that decisions in other circuits and the legislative history of section 1330(b)[6] should persuade this court to adopt the position suggested by Iran. *See, e.g., Carey v. National Oil Corp.,* 592 F.2d 673, 676 (2d Cir. 1979) (per curiam) (no direct effects in the United States therefore minimum contacts standard not met); *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica,* 614 F.2d 1247, 1255 (9th Cir.1980) (holding that FSIA requires satisfaction of the traditional minimum contact standard, therefore, because constitutional personal jurisdiction was not present, there was no need to examine the intricacies of the FSIA; dictum noting that the words "direct effect" have been interpreted to embody the minimum contacts standard); *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 454 (6th Cir.1988) (Congress sought to require jurisdictional contacts and notice which would satisfy due process requirements); *see also* H.Rep.No. 94–1487, 94th Cong., 2d Sess. 13–14 (1976) *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6612 ("the requirements of minimum con-

---

3. Section 1605(a)(2) reads
(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.
*Id.* Jurisdiction, if it exists in this case, arises pursuant to the third clause of subsection (2). *Foremost–McKesson, Inc., v. Iran,* 905 F.2d at 450.

4. The discovery consists of one interrogatory and one request for production. The interrogatory and request read

Set out in detail all information which plaintiffs contend establishes that the State or Government of the Islamic Republic of Iran had minimum contacts with the forum in this case.
Produce all documents which support, refute, or otherwise relate to plaintiffs' answer to the above interrogatory.

5. Iran correctly notes that it did preserve the issue of statutory personal jurisdiction. *See Foremost–McKesson,* 905 F.2d at 453.

6. 28 U.S.C. § 1330(b) reads "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under subsection (a) where service has been made under section 1608 of this chapter." *Id.*

tacts and adequate notice are embodied in [28 U.S.C. § 1330(b) ]'").

This Court initially notes neither the cases nor the legislative history relied on by Iran are binding on this Court.[7] Two of the cases cited by Iran, *Carey* and *Gonzalez*, are neither binding nor persuasive. Moreover, the third case that Iran relies upon, *Gould*, actually supports this Court's decision.

■ The holding in *Carey*, and the dictum in *Gonzalez*, are grounded in the idea that "minimum contacts" are included as part of "direct effects." This Circuit has rejected that approach. *Gilson v. Republic of Ireland*, 682 F.2d 1022, 1028 (D.C.Cir. 1982). It is clear from the direct effects analysis in *Foremost–McKesson*, 905 F.2d at 450–51, that direct effects are different from, and do not include, minimum contacts. The Court of Appeals has ruled that the direct effects alleged in this case, if proved, are sufficient to subject Iran to the subject matter jurisdiction of this Court. *Id.*

■ Additionally, both *Carey* and *Gonzalez* were decided prior to *Texas Trading and Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In *Texas Trading*, the Second Circuit attempted to determine, once and for all, the correct way to analyze jurisdiction under the FSIA. As Chief Judge Kaufman, who also sat on the panel in *Carey*, put it: "[t]hese cases present an opportunity to untie the FSIA's Gordian knot, and to vindicate the Congressional purposes behind the [FSIA]." *Texas Trading*, 647 F.2d at 307. Chief Judge Kaufman, speaking for the Second Circuit, held in *Texas Trading* that minimum contacts analysis is not part of direct effects analysis. *Id.* at 308. Indeed, *Texas Trading*

held that minimum contacts analysis was part of constitutional due process analysis. *Id.* at 313–15. Constitutional due process analysis is only employed after a finding of subject matter jurisdiction and statutory personal jurisdiction. *Id.* at 308. In light of *Texas Trading*, both the holding in the short *per curiam* opinion in *Carey* and the dictum in *Gonzalez*, which cites *Carey*, are less than persuasive.

Furthermore, contrary to Iran's assertions, the *Gould* decision supports this Court's position. In *Gould*, the district court had denied the sovereign defendants' motion to dismiss for lack of personal jurisdiction on the ground that plaintiff showed sufficient minimum contacts to assert personal jurisdiction. *Gould*, 853 F.2d at 453–54. The Sixth Circuit held that this constituted error and stated that "[up]on remand, then, personal jurisdiction will depend upon the district court finding subject matter jurisdiction under 28 U.S.C. § 1330(a), and proper service under 28 U.S.C. § 1608." *Id.* at 454. This Court's decision, following the rule of this Circuit, also conditions a finding of statutory personal jurisdiction upon a finding of subject matter jurisdiction and proper service.

■ The United States Court of Appeals for the District of Columbia Circuit explained the process for determining jurisdiction under the FSIA in this Circuit in *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C.Cir.1982).[8] First, the court must determine whether subject matter jurisdiction exists. *Gilson*, 682 F.2d at 1026. "Subsequent to the determination of subject matter jurisdiction is the issue of personal jurisdiction." *Gilson*, 682 F.2d at 1028 (quoting *Texas Trading*, 647 F.2d at 313). "Statutorily, personal jurisdiction exists so long as subject matter jurisdiction

---

**7.** The excerpt of legislative history cited to this Court by Iran is not totally inconsistent with this Court's holding in this case. Consistent with the legislative history of the FSIA, and pursuant to the Constitution, this court cannot exercise personal jurisdiction over a sovereign without a showing of minimum contacts. In the case at bar, Iran has waived its right to challenge the Court's exercise of jurisdiction on the ground that constitutional personal jurisdic-

tion is lacking. *Foremost–McKesson*, 905 F.2d at 453. To the extent that the holding in this case is not totally consistent with the legislative history, it is because this Court is bound by the statute and the District of Columbia Circuit, rather than the legislative history.

**8.** *Gilson* closely follows *Texas Trading*.

exists and service has been properly made under section 1608 of the FSIA." *Gilson,* 682 F.2d at 1028; *see also* 28 U.S.C. § 1330(b) ("[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have [subject matter] jurisdiction under subsection (a) where service has been made under section 1608 of this chapter."); *Foremost–McKesson,* 905 F.2d at 442 ("personal jurisdiction under FSIA exists so long as subject matter jurisdiction exists and service has been properly made pursuant to 28 U.S.C. § 1608"). The statute, however,

> cannot grant personal jurisdiction where the Constitution forbids it, and the Supreme Court has held repeatedly that certain 'minimum contacts' must exist between the person and the jurisdiction to be consistent with the Due Process Clause of the Fifth Amendment.

*Gilson,* 682 F.2d at 1028.

Following its determination of subject matter jurisdiction and statutory personal jurisdiction, the court in *Gilson* proceeded to follow a traditional minimum contacts analysis to determine whether constitutional personal jurisdiction existed. *Id.* at 1028–29; *see also Foremost–McKesson,* 905 F.2d at 453 (constitutional personal jurisdiction is "separate ground" from statutory personal jurisdiction).

 In this case, while discussing subject matter jurisdiction, the Court of Appeals held that, for purposes of a motion to dismiss, Iran's actions "were sufficiently commercial in nature," and that the "alleged effects [of the actions] were sufficiently direct" to permit subject matter jurisdiction. *Foremost–McKesson,* 905 F.2d at 450–51. Thus, for purposes of this analysis, subject matter jurisdiction is properly exercised. Additionally, service was proper under section 1608. Therefore, statutory personal jurisdiction is properly exerted by this court. The Court of Appeals held that Iran waived its right to challenge constitutional personal jurisdiction. *Foremost–McKesson,* 905 F.2d at 453 ("Iran may not now raise the separate constitutional ground for a claim of lack of *in personam* jurisdiction.") The three pronged analysis of *Gilson* is, therefore, satisfied in this case. Iran may challenge subject matter jurisdiction. Iran may also dispute statutory personal jurisdiction if subject matter jurisdiction is lacking. As Iran is barred from obtaining discovery that is not "reasonably calculated to lead to the discovery of admissable evidence," Fed. R.Civ.P. 26(a), discovery regarding minimum contacts and personal jurisdiction will not be permitted.

### IV.

In conclusion, this court will grant plaintiffs' motion for leave to amend the complaint because (a) the delay does not warrant prohibiting the amendment; (b) Iran will suffer no prejudice because of the amendment; and (c) the tortious interference claim is not futile as a matter of law. Also, this court will deny defendants' motion for leave to file discovery concerning personal jurisdiction because the Court of Appeals has ruled that Iran has waived its right to challenge personal jurisdiction on constitutional grounds and the discovery request is therefore not reasonably calculated to lead to the discovery of admissible evidence.