**Thomas GIBBONS and William R. Beiseigel, Plaintiffs,**

**v.**

**The REPUBLIC OF IRELAND, Udaras na Gaeltachta, and Industrial Development Authority of Ireland, Defendants.**

Civ. A. No. 81–934.

United States District Court, District of Columbia.

Feb. 10, 1982.

Joseph H. Sharlitt, Sheldon Z. Kaplan, Washington, D. C., for plaintiffs.

Edward A. McDermott, William A. Bradford, Washington, D. C., for defendant Republic of Ireland.

J. P. Janetatos, Elizabeth E. Dodge, Washington, D. C. and Robert B. Davidson, New York City, for defendants Udaras na Gaeltachta and Industrial Development Authority of Ireland.

## MEMORANDUM

GESELL, District Judge.

This is an action against the Republic of Ireland and two of its instrumentalities under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq. (1976). The matter is before the Court initially upon the motion of the Republic of Ireland for summary judgment, plaintiffs' opposition thereto and the entire record herein. A motion to dismiss has also been filed by the two instrumentalities, Udaras na Gaeltachta ("UG") and Industrial Development Authority of Ireland ("IDA").[1] Since the motion of the Republic of Ireland is dispositive as far as the Court's jurisdiction is concerned it is unnecessary to consider the motion of the other two defendants except as it relates to the determination of a proper venue.

Both plaintiffs are United States citizens. They established a business in Ireland to produce metallized containers for use by the cosmetic industry in Europe. In exchange for their commitment to establish the business in a depressed region of Ireland UG agreed to provide various types of financial assistance. Once initiated, the venture was not a success and the Irish corporation established by plaintiffs is now being liquidated in Ireland.

Plaintiffs allege that employees of UG and IDA made various false representations to induce them to set up business in Ireland, to move to Ireland to manage the business, and to divulge certain proprietary informa-

1. By their motion defendants UG and IDA alternatively moved for a stay by reason of proceedings now pending in Ireland involving re- lated issues or, in the final alternative, to transfer to the Southern District of New York.

tion. It is further alleged that UG breached its agreement with plaintiffs and tortiously interfered with their financial relationship with the Irish corporation they established and with their expectancy of financial gain. Finally, plaintiffs allege that defendants took their property in violation of international law. Plaintiffs seek an accounting and damages.

[1] The Republic of Ireland is alleged to be liable on the ground that IDA and UG were acting as the agents of the Republic. Under the Foreign Sovereign Immunities Act a foreign state as defined in 28 U.S.C. § 1603(a) (1976) is subject to suit in United States courts if it engages in commercial activity having a sufficient nexus with the United States. *See* 28 U.S.C. § 1605(a) (1976). UG and IDA were engaged in commercial activities allegedly having a sufficient connection with the United States to subject them to suit in United States courts under the Act. The dispositive issue presented by the Republic of Ireland's motion for summary judgment is whether under the facts of this case the Republic of Ireland as the ultimate authority controlling the activities of these companies should also be subjected to suit and thus held responsible for the actions of IDA and UG.[2]

UG and IDA were established by the Republic of Ireland to support the development of industry in Ireland. *See* Gaeltacht Industries Act, 1957; Industrial Development Authority Act, 1950. They are separate corporate bodies with power to sue and be sued. During the period relevant to this complaint the board of UG and the members of the Authority were appointed pursuant to statute by the Ministry for the Gaeltacht and the Ministry of Industry and Commerce, respectively. Although the Republic, through these ministries, exercises general supervisory control over UG and IDA, it is not involved in the day-to-day operations of either body. Affidavits prepared by representatives of the two ministries establish that neither was involved in nor had any knowledge of the events giving rise to this complaint.

Plaintiffs concede that a foreign sovereign is not automatically subject to suit for the actions of its instrumentalities. They contend, however, that the Republic of Ireland should be subject to suit in this case because of the close legal relationship between these instrumentalities and the government of Ireland. The Court holds that under the facts of this case the Republic of Ireland is not subject to suit for the alleged wrongdoing of its instrumentalities IDA and UG.

■ This conclusion is based primarily on the nature of the doctrine of sovereign immunity. Whether justified by the law and practice of nations, *see The Schooner Exchange v. McFaddon*, 11 U.S. 116, 7 Cranch 116, 3 L.Ed. 287 (1812), or the wise policy of deferring to the Executive in matters relating to foreign affairs, *see Mexico v. Hoffman*, 324 U.S. 30, 34, 65 S.Ct. 530, 532, 89 L.Ed. 729 (1945), the immunity of foreign sovereigns has long been recognized in United States courts. Although the gradual judicial acceptance and ultimate adoption

---

**2.** The few reported cases that have decided the issue presented by this case have held that the sovereign may be subjected to suit. *See American Intl. Group, Inc. v. Islamic Republic of Iran*, 493 F.Supp. 522 (D.D.C.1980), *vacated on other grounds*, 657 F.2d 430 (D.C.Cir.1981); *United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F.Supp. 609 (S.D.N.Y.1978). However, the indications of sovereign involvement in the alleged wrongdoing of the state instrumentalities were much stronger in those cases than here. On the other hand, the Court notes that at least one court has held that the presence of an instrumentality in the United States is not sufficient to give a United States court jurisdiction over the government that created it. *See National American Corp. v. Federal Republic of Nigeria*, 448 F.Supp. 622, 637 n. 26 (S.D.N.Y.1978), *aff'd on other grounds*, 597 F.2d 314 (2nd Cir. 1979).

It appears that a government instrumentality may be held liable for actions of the sovereign where the instrumentality acted as the "alter ego" of the sovereign. *See Banco para el Comercio v. First Natl. City Bank*, 658 F.2d 913, 918 (2d Cir. 1981). While the language of that decision suggests that the sovereign should not be routinely subjected to suit for the acts of its instrumentalities, the liability of an instrumentality for the acts of the sovereign is obviously distinguishable from the question presented here.

by Congress of the restrictive theory of sovereign immunity, *see* S.Rep. 1310, 94th Cong., 2d Sess. 9 (1976) (hereinafter referred to as "S.Rep.") has reduced the scope of the doctrine, immunity remains the rule rather than the exception. The Foreign Sovereign Immunities Act states that, except as provided in international agreements and the specific provisions of the Act, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States ..." 28 U.S.C. § 1604 (1976). The legislative history explains that the Act

> starts from a premise of immunity and then creates exceptions to the general principle. The chapter is thus cast in a manner consistent with the way in which the law of sovereign immunity has developed. Stating the basic principle in terms of immunity may be of some advantage to foreign states in doubtful cases.... S.Rep. at 16–17.

Similarly, the Restatement (Second) of Foreign Relations Law (1965) recognizes that "a state is immune from the exercise by another state of jurisdiction to enforce rules of law," *id.* § 65, subject only to well-defined exceptions, *id.* §§ 68, 69. Thus, this Court must respect the immunity of a foreign sovereign unless some exception to the rule of sovereign immunity is clearly warranted.

The Foreign Sovereign Immunities Act does not provide explicit guidance on this issue. The legislative history indicates that the Act was "not intended to affect ... the attribution of responsibility between or among entities of a foreign state," S.Rep. at 11.

 The Act does, however, distinguish between the sovereign and its instrumentalities, clearly implying that the sovereign should not be routinely subjected to suit for the acts of its instrumentalities. If liability is found against an instrumentality, all of the property of an instrumentality is sub-

ject to execution, whether or not the property had any connection with the claim, 28 U.S.C. § 1610(b) (1976); but state property is subject to execution only if the property is or was used for the commercial activity upon which the claim is based. 28 U.S.C. § 1610(a) (1976). There is no suggestion that state property is involved in this activity. Entirely distinct provisions govern the manner of service of process upon a foreign state or one of its political subdivisions and an agency or instrumentality of a foreign state. *Compare* 28 U.S.C. § 1608(a) (1976) *with* 28 U.S.C. § 1608(b) (1976). Moreover, a foreign state cannot be held liable for punitive damages but an agency or instrumentality may be. 28 U.S.C. § 1606 (1976).

 It is evident from the Act and its legislative history that Congress contemplated that an action could be brought against either a foreign state or one of its instrumentalities depending on the circumstances but that a foreign state should not be automatically subject to suit for the actions of one of its instrumentalities. If this were not the case little purpose would be served by specifically providing for suits against an instrumentality and the distinctions drawn in the Act between the sovereign and its instrumentalities would be largely superfluous. It is far more reasonable in light of these provisions to assume that Congress intended that a sovereign could be subjected to suit only where representatives of the sovereign participated at least to some degree in the events giving rise to the action.

Another factor bolstering this interpretation of congressional intent is that the United States is generally immune from suit in its own courts under similar circumstances. In *FHA v. Burr*, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1939), the Court held that the immunity of the United States is not abrogated when Congress provides that an agency or instrumentality of the United States may sue or be sued.[3] To the extent

---

**3.** However, the United States may be a proper party defendant where the action arises from the actions of an agency with the power to sue and be sued if an independent waiver of sover-

eign immunity is applicable. *See, e.g., Butz Engr. Corp. v. United States*, 499 F.2d 619 (Ct. Cl.1974) (Tucker Act); *Edelman v. FHA*, 382

that United States instrumentalities with the power to sue and be sued engage in international commercial transactions giving rise to litigation in foreign courts it would obviously be preferable if the agency and not the United States were subjected to suit. However, the United States would be in a poor position to complain if its courts failed to draw a distinction between a foreign government and its instrumentalities.

The Treaty of Friendship, Commerce and Navigation between the United States and Ireland, 1 U.S.T. 788, further supports the conclusion that the Republic of Ireland should not be subjected to suit in this instance. Article XV(3) states:

> No enterprise of either Party which is publicly owned or controlled shall, if it engages in commercial, manufacturing, processing, shipping or other business activities within the territories of the other Party, claim or enjoy, either for itself or for its property, immunity therein from taxation, suit, execution of judgment or other liability to which privately owned and controlled enterprises are subject therein.

This provision clearly waives the immunity of "enterprises" of the Republic of Ireland owned by the state but is silent as to the sovereign itself. Since the treaty is silent as to the Republic it does not immunize the Republic from suit and the Republic may therefore be subjected to suit if the requisites of the Foreign Sovereign Immunities Act are met. See 28 U.S.C. § 1605 (1976); S.Rep. at 17. But the distinction drawn by the Treaty between enterprises of the sovereign and the sovereign itself supports the conclusion that the actions of its instrumentalities should not be automatically imputed to the sovereign as is attempted here.

Finally, it should also be noted that infringing upon the immunity of the Republic in this case would serve no purpose in terms of providing plaintiffs with a superior remedy. As indicated, plaintiffs may enforce a judgment in their favor by levying on any property held by IDA or UG. But plaintiffs could not seek to enforce a judgment by levying on property of the Republic inasmuch as no property of the Republic was used in connection with the activities upon which the complaint is based. See 28 U.S.C. § 1610(b) (1976).

To support the proposition that the Republic of Ireland is a proper defendant in this action plaintiffs argue that the mission of the IDA and UG is to further the economic development policy of the Republic. However, for the purposes of determining whether a sovereign should be held liable along with its instrumentalities it is far more relevant to determine whether government officials acted in concert with employees of an instrumentality than whether they seek the same ultimate objective. Cf. 28 U.S.C. § 1603(d) (1976) ("The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.") Plaintiff also relies on various provisions of the Gaeltacht Industries Act and the Industrial Development Authority Act to show that the ministries which supervise these entities have the power to control certain of their operations. Whether latent powers were reserved by the sovereign is irrelevant inasmuch as undisputed affidavits submitted by defendant Republic of Ireland establish that no representative of the ministries had any actual involvement with these matters.[4]

■ It is necessary to dismiss this case as to the Republic of Ireland. As a result, venue will not lie here. See 28 U.S.C. § 1391(f) (1976). As between dismissing the complaint and transferring the case as suggested as an alternative by defendants

F.2d 594 (2d Cir. 1967) (Federal Tort Claims Act).

4. Plaintiffs also rely on the common law of agency in their effort to establish the Republic of Ireland's legal responsibility for the acts of UG and IDA. Legal rules of agency developed in a domestic context and involving nongovernmental parties have little relevance to the issue presented by this litigation. Cf. Mexico v. Hoffman, 324 U.S. 30, 40, 65 S.Ct. 530, 535, 89 L.Ed. 729 (Frankfurter, J., concurring).

UG and IDA in their motion papers, the Court finds that it will be in the interest of justice to transfer this case. The great bulk of the activities giving rise to this action which occurred in the United States took place in New York City and IDA has offices there. The only plaintiff resident in the United States lives and works in New Jersey. Accordingly, the case will be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1406(a) (1976).

Since the Republic of Ireland must be dismissed from this action and the case will be transferred to another forum it is unnecessary to consider the other issues raised by defendants' motions. An appropriate Order is filed herewith.