HESTER INTERNATIONAL CORPORATION, Plaintiff,

v.

The FEDERAL REPUBLIC OF NIGERIA, National Grains Production Company, Limited, A Company Incorporated in Nigeria, and the Government of Cross River State of Nigeria, Defendants.

No. WC85–49–NB–D.

United States District Court, N.D. Mississippi, W.D.

Feb. 22, 1988.

Thomas W. Prewitt, Jackson, Miss., for plaintiff.

Walker W. Jones, III, Jackson, Miss., for defendants.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This bench trial was conducted during June, 1987. Having duly considered the post-trial memoranda filed by the parties, the court is now in a position to make its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. The court is also ready to rule on the pending motions:

(1) the defendants' motion to strike the plaintiff's original trial brief attached as a supplement to its post-trial brief on the issues of subject matter and *in personam* jurisdiction;

(2) the defendants' motions to dismiss for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim upon which relief can be granted; and

(3) the plaintiff's motion to reconsider the court's order excluding evidence of loss of future profits and good will on the issue of damages.

### I. Introduction

Hester International Corporation [Hester], a Mississippi corporation, brought this action pursuant to the Foreign Sovereign Immunities Act [FSIA], 28 U.S.C. § 1602,

et seq., against the Federal Republic of Nigeria [Nigeria], National Grains Production Company, Limited [NGPC], and the Government of Cross River State of Nigeria [Cross River]. NGPC is a corporation created by the government of Nigeria under the Nigerian Companies Act of 1968 to support the development of agricultural projects in Nigeria, specifically large-scale mechanized commercial farming operations in each of the nineteen states of Nigeria. *See* Exhibits P-261 and D-975. Hester alleges breaches on the part of all the defendants of an agreement executed on April 9, 1981 to develop and implement the Bansara Rice Farms project in Cross River State. *See* Exhibit P-1. The agreement contemplates a profit-making rice farm of approximately 10,000 acres (4,000 hectares) managed by Bansara Rice Farms, Ltd. as a joint venture partnership. Signatories executed the agreement on behalf of NGPC, Cross River, and Hester, in association with Bajo Sosanya of Rice Exporters and Producers, Ltd. [REP], one of Hester's directors. Interests in Bansara Rice Farms, Ltd. were distributed among named parties to the agreement:

(1) forty percent to Hester;

(2) thirty percent to NGPC; and

(3) thirty percent to Cross River.

The agreement identifies Hester, in association with Bajo Sosanya of REP, as the technical partner whose duties included the following:

(1) preparing a 1981 rice cropping program and budget;

(2) preparing a feasibility study;

(3) shipping equipment for 1000 hectares (approximately 2500 acres) of rice in 1981;

(4) clearing the land for the 1981 crop;

(5) planting rice on 1000 hectares;

(6) mobilizing all necessary resources to grow 1000 hectares in the 1981 crop season; and

(7) paying 400,000 naira (approximately $600,000.00) for its 40% share of Bansara Rice Farms, Ltd. stock. (The Board of Directors of Bansara Rice Farms, Ltd. subsequently agreed to allow Hester to pay $100,000.00 in cash and the remain-

der in kind in the form of engineering equipment and services.) *See* Exhibits P-202 (4.3), P-209 (¶ 7), D-110, and D-346 (5.2).

The agreement assigns financing obligations to both Hester and NGPC:

(1) Hester was to procure external financing for off-shore costs of the project, "provided that the Government of the Federal Republic of Nigeria shall always provide a guarantee for such sum"; and

(2) NGPC was to procure financing for the on-shore costs of the project, including costs of fuel, consummables, equipment, labor, housing, land clearing and indigenous personnel, "provided that the Government of the Federal Republic of Nigeria shall always provide a guarantee for such sum."

In addition, NGPC agreed to incorporate a limited liability company [Bansara Rice Farms, Ltd.], to procure the necessary expatriate quota for Bansara Rice Farms, Ltd., and to pay compensation for crops on 2,400 hectares. Cross River agreed to surrender the 2,400 hectares that had been surveyed, to furnish NGPC details of the compensation paid for 2,400 hectares, to obtain a perimeter survey of the entire 4,000 hectares, and to assist in providing accommodations for a team of ten expatriates for two months.

Hester alleges that Nigeria was obligated under the agreement to guarantee the on-shore and off-shore financing and that it breached the agreement by refusing to issue a letter of intent to guarantee an off-shore loan in the sum of $50,000,000.00 to be procured by Hester. Hester further alleges that both NGPC and Cross River, acting as alter egos or agents of Nigeria, breached the agreement by failing to provide the requested letter of intent from Nigeria. In addition, NGPC allegedly breached its duty to provide additional interim on-shore financing in excess of $10,-000,000.00 (10,000,000 naira). The defendants deny the allegations and claim that Hester breached the agreement in failing to pay its equity share in Bansara Rice Farms, Ltd. and to provide firm offers of external financing. The defendants fur-

ther allege that Hester did not have sufficient expertise, experience, and resources and, thus, misrepresented its ability to meet the requirements of the agreement.

The plan for an irrigated, mechanized and fully integrated rice farm, as proposed in Hester's feasibility study, was not implemented. In January, 1983, the Board of Directors of Bansara Rice Farms, Ltd. voted to terminate Hester as the technical partner under the 1981 agreement. Hester seeks damages in the sum of $206,608,-000.00 for loss of future profits or, in the alternative, the value of Hester's 40% interest in Bansara Rice Farms, Ltd. Hester alleges that the defendants wrongfully disposed of its interest. The defendants argue that there is no evidence of the value of Hester's shares in Bansara Rice Farms, Ltd. before or after the alleged breaches.

After Hester rested, the defendants moved to exclude any evidence of loss of future profits and good will. Upon hearing oral argument, the court granted the motion to exclude. Hester moved to reconsider and the parties have submitted post-trial memoranda on the issue of damages and whether Nigerian law applies.

In their post-trial memoranda, proposed findings of fact, and conclusions of law, the parties addressed the following issues:

(1) the alleged alter ego/agency relationship between Nigeria and the other defendants;

(2) the "commercial activity" exception to sovereign immunity under the FSIA;

(3) interpretation of the government guarantee provision in the 1981 agreement;

(4) alleged fraud in the inducement on the part of Hester;

(5) performance of the parties under the 1981 agreement; and

(6) damages.

## II. History of Case

This cause was originally tried on April 2, 1986, at which time the defendants appeared but presented no evidence. Thus, the only evidence before the court was presented by Hester. After hearing testimony and argument on behalf of Hester and considering Hester's trial brief, the court entered a judgment for Hester in the sum of $206,608,000.00 against defendants Nigeria, NGPC, and Cross River. The defendants moved to set aside the judgment on the grounds of inadequate and improperly served notice of trial and lack of an opportunity to present their meritorious defenses at trial. The court granted the defendants' motion on July 24, 1986 and set a new trial on June 15, 1987. On October 21, 1986, the court granted the defendants' motion to amend the pretrial order and reopen discovery.

On October 15, 1986, the defendants moved to dismiss for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim upon which relief can be granted. By order of the court on June 1, 1987, the motions to dismiss were carried over to trial. The defendants renewed their motions after Hester rested and the court reserved ruling.

## III. Defendants' Motion to Strike

Hester originally opposed the defendants' motions to dismiss in a previous trial brief submitted after the April 2, 1986 trial. At that time, the defendants objected on the ground that the brief refers to documents introduced at the first trial and incorporates the court's original findings in support of the vacated judgment. Hester resubmitted the brief as a supplement to its recent post-trial memorandum on the jurisdictional issues. Renewing their objections, the defendants argue that the brief in dispute is precluded by the court's order vacating the previous judgment and setting a new trial and, therefore, is not properly before the court. Upon due consideration, the court finds that the motion to strike is not well taken and should be denied.

## IV. Nigeria's Motion to Dismiss

Nigeria moved to dismiss for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim. The threshold issue of subject matter jurisdiction over Nigeria is whether defendants NGPC and Cross River executed the 1981 agreement and engaged in the

joint venture of Bansara Rice Farms, Ltd. as agents or alter egos of Nigeria. In its initial post-trial memorandum on the jurisdictional issues, Hester asserted that the law of Nigeria governs the issue of agency. However, in a subsequent memorandum, Hester agrees that American law governs the agency issue in an action under the FSIA. The United States Supreme Court rejected the proposition that foreign law could in any circumstances govern the issue of attribution of liability among entities of a foreign state in actions under the FSIA. *First National City Bank v. Banco Para el Comercio Exterior de Cuba [Bancec],* 462 U.S. 611, 621–22 n. 11, 622–23, 103 S.Ct. 2591, 2598 n. 11, 2597–98, 77 L.Ed.2d 46, 55–56 n. 11 (1983).

Federal court jurisdiction in suits against a foreign state, as defined in the FSIA, 28 U.S.C. § 1603(a), is exclusively based upon 28 U.S.C. § 1330 (district courts have original jurisdiction of nonjury civil actions against a foreign state not entitled to immunity under sections 1605–1607). *See De Letelier v. The Republic of Chile,* 748 F.2d 790, 793 (2d Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *Maritime International Nominees Establishment v. The Republic of Guinea,* 693 F.2d 1094, 1099 (D.C.Cir.1982) ("absence of immunity is a condition to the presence of subject matter jurisdiction"), *cert. denied,* 464 U.S. 815, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983). Suits against a foreign state under the FSIA necessarily raise substantive federal law. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81, 92 (1983). The court must apply "the detailed federal law standards set forth in the [FSIA]" in determining whether a defendant foreign state falls under an exception to sovereign immunity. *Id.* at 493–94, 103 S.Ct. at 1971, 76 L.Ed.2d at 92.

The FSIA grants sovereign immunity to foreign states, subject to exceptions delineated in sections 1605–1607. 28 U.S.C. § 1604. Hester seeks to invoke subject matter jurisdiction over Nigeria under the "commercial activity" exception in section 1605(a)(2) which Nigeria must prove is inapplicable. *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne De Navigation (C.N.A.N.),* 730 F.2d 195, 199 (5th Cir.1984) (party claiming FSIA immunity bears the burden of proving that exceptions do not apply). Nigeria asserts that it is not a party to the 1981 agreement and did not conduct any commercial activities pursuant to the Bansara Rice Farms project. It is undisputed that Nigeria is not directly a party to the agreement. Hester asserts that NGPC, acting on behalf of Nigeria, executed the agreement in dispute, thereby making Nigeria a party to the agreement, and that NGPC and Cross River carried on commercial activities as agents or alter egos of Nigeria. Thus, Hester has the burden of making a prima facie showing of the alleged agency or alter ego relationships. *See Product Promotions, Inc. v. Cousteau,* 495 F.2d 483, 492 (5th Cir.1974) (where alleged agency and parent-subsidiary relationships are facts on which jurisdiction is predicated, the party invoking the court's jurisdiction has the burden of making a prima facie showing of their existence).

Subject matter jurisdiction under section 1605(a)(2) requires a showing of commercial activity carried on by the defendant foreign state. *Maritime International Nominees Establishment v. The Republic of Guinea,* 693 F.2d at 1105. A foreign state is defined in 28 U.S.C. § 1603:

(a) A 'foreign state,' except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).

(b) An 'agency or instrumentality of a foreign state' means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor

created under the laws of any third country.

It is undisputed that Cross River State is one of nineteen states comprising the Federal Republic of Nigeria and Cross River is a political subdivision of Nigeria. Therefore, Cross River is a foreign state, as defined in section 1603(a). NGPC is a corporation created as a separate entity by the Nigerian government which owns 100% of its stock (testimony of Alhaji Alkali, NGPC's general manager). *See* Exhibit P–261. NGPC, as well as Cross River, can sue and be sued (affidavit of Mashood O. Adio, Legal Advisor/Assistant Director of the Federal Ministry of Justice, attached to defendants' motions to dismiss as Exhibit 1). NGPC is an agency or instrumentality of Nigeria and thus a foreign state, as defined in section 1603(a).

■ The status of NGPC as an agency or instrumentality of Nigeria under the FSIA is insufficient to subject Nigeria to suit for NGPC's alleged wrongdoings. In *Gibbons v. The Republic of Ireland*, the court found that:

> Congress contemplated that an action could be brought against either a foreign state or one of its instrumentalities depending on the circumstances but that a foreign state should not be automatically subject to suit for the actions of one of its instrumentalities.

532 F.Supp. 668, 671 (D.D.C.1982). The FSIA draws distinctions between the sovereign and its instrumentalities with regard to service of process (28 U.S.C. § 1608(a) and (b)), property subject to execution (28 U.S.C. § 1610(a) and (b)), and punitive damages (28 U.S.C. § 1606). *See Gibbons*, 532 F.Supp. at 671.

In *Gibbons* two United States citizens contracted with two instrumentalities of the Republic of Ireland to establish a business in Ireland. The Republic of Ireland created the instrumentalities, Udaras na Gaeltachta [UG] and The Industrial Development Authority of Ireland [IDA], to support the development of industry in Ireland. UG's and IDA's board members are appointed by the Republic of Ireland. Similarly, Nigeria created NGPC to support the development of agricultural projects in Nigeria and also appoints its board of directors (Alkali's testimony). *See* Exhibits P–261 and D–975 (1.1). UG and IDA, like NGPC, are separate corporate bodies with power to sue and be sued. Affidavits established that the government ministries exercised general supervisory control over UG and IDA but were not involved in the day-to-day activities or operations of either entity and had no knowledge of or involvement in the transaction among the parties. *Id.* at 670. The court dismissed the action against the Republic of Ireland holding:

> [T]hat a sovereign could be subjected to suit only where representatives of the sovereign participated at least to some degree in the events giving rise to the action.

*Id.* at 671. The court reasoned:

> [I]t is far more relevant to determine whether government officials acted in concert with employees of an instrumentality than whether they seek the same ultimate objective. *Cf.* 28 U.S.C. § 1603(d) (1976) ("The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose").

*Id.* at 672.

■ In an action involving a wholly owned instrumentality of the Republic of Cuba serving as a credit institution for foreign trade, the Supreme Court found that:

> Congress clearly expressed its intention that duly created instrumentalities of a foreign state are to be accorded a presumption of independent status.

*First National City Bank v. Bancec*, 462 U.S. at 627, 103 S.Ct. at 2600, 77 L.Ed.2d at 59. In order to overcome the presumption of independent status, the party seeking to pierce the corporate veil must show that the corporate entity "is so extensively controlled by its owner that a relationship of principal and agent is created" and that recognition of the corporation's independent status "would work fraud or injustice." *Id.* at 629–30, 103 S.Ct. at 2601, 77

L.Ed.2d at 60. *See United Euram Corp. v. Union of Soviet Socialist Republics*, 461 F.Supp. 609, 612 (S.D.N.Y.1978) (allegations that at least one official of the Soviet Ministry of Culture directly participated in negotiations with the plaintiff and that the Ministry approved the contracts giving rise to the action were sufficient to withstand a motion to dismiss).

In another action against the Republic of Ireland and three Irish corporations, the court stated:

> [T]hat the legislative history of FSIA establishes that Congress did not intend "to cause the courts willy-nilly to pierce the corporate veils of foreign entities."

*Gilson v. The Republic of Ireland*, 682 F.2d 1022, 1029 (D.C.Cir.1982). *See First National City Bank v. Bancec*, 462 U.S. at 625–27, 103 S.Ct. at 2599–2600, 77 L.Ed.2d at 57–59. The court in *Gilson* reversed and remanded the district court's order of dismissal as to the Republic of Ireland under the FSIA on the ground that the order was "premature in light of the dearth of fact-finding done by the district court thus far." 682 F.2d at 1026. The court concluded that a finding of insufficient involvement on the part of one or more defendants should result in a dismissal as to those defendants. *Id.* at 1029.

Since Nigeria's motion to dismiss was carried over to trial, the court has considered all the evidence presented at trial in determining the nature of Nigeria's relationship with NGPC and Cross River. The court makes the following findings of fact based on the trial testimony and exhibits:

(1) NGPC's government-owned stock was available for purchase by the public (testimony of Alkali and Dave Oyakhilome, assistant general manager of NGPC).

(2) The relevant period of time runs from negotiations beginning in January, 1981 (Exhibit P–15) to Hester's termination as technical partner in January, 1983 (Exhibit D–229, ¶ 7). Oyakhilome testified that the joint venture partnership has been dormant since 1982 and a new technical partner has not yet been found for the Bansara project. John Hester, President of Hester, testified that Hester no longer considered itself a partner in the Bansara project in November or December, 1982.

(3) NGPC had approximately 200 employees who were not employees of Nigeria and not bound by the Civil Service Rules and Regulations (Alkali's testimony).

(4) No employee or official of Nigeria was involved in the negotiations or execution of the parties' agreement (testimony of John Hester and Alkali).

(5) The agreement was not approved by any employee or official of Nigeria prior to its execution (Alkali's testimony).

(6) Hester asserts that NGPC was fully funded by Nigeria. On the contrary, NGPC generated its own income from farms which it operated and from commercial and government loans (Oyakhilome's testimony).

(7) NGPC had borrowing authority in the sum of twenty million naira approved by Nigeria for external borrowing in 1982. NGPC intended to use the full extent of its borrowing authority for the Bansara Rice Farms project. *See* Exhibits P–148 and P–149.

(8) NGPC advanced $2,254,000.00 out of its operating budget for the purchase of equipment through a letter of credit issued from its bank account in Nigeria. *See* Exhibits P–5, P–6, P–72, D–334 (¶ 8) and D–374 (p. 11).

(9) NGPC advanced $184,000.00 out of its operating budget for the purchase of rice seed through a letter of credit issued from its bank account in Nigeria. *See* Exhibits P–5, P–6, D–106, D–334 (¶ 8) and D–374 (p. 11).

(10) Hester asserts that Cross River transferred the farm land to Bansara Rice Farms, Ltd. and was reimbursed for the value of the land through funds from Nigeria to NGPC. On the contrary, there is no freehold ownership of land in Nigeria and the Bansara site was to be used by the Bansara joint venture partnership under the authority of a certificate of ownership held by NGPC (Oyakhilome's testimony). *See* Exhibits P–88 and P–202 (4.4).

(11) Hester asserts that Nigeria, owning 100% of NGPC's stock, also owned NGPC's 30% interest in Bansara Rice Farms, Ltd. and exercised voting rights. Hester cites Exhibit P–26 (p. 17, ¶ 59), the Articles of Association of Bansara Rice Farms, Ltd. which reads:

> The Government of the Federal Republic of Nigeria or that of any participating State of Nigeria may by an instrument in writing authorise [sic] a member of the Government or a member of the Public Service to act as its representative at any General Meeting of the Company, and any member, being a corporation, may by resolution of its director or other governing body authorise [sic] any of its officials or any other person to act as its representative to exercise the same functions on behalf of such Government or Corporation as if he had been an individual shareholders [sic].

The court finds that such provision does not authorize Nigeria to vote any shares in Bansara Rice Farms, Ltd. and there is no evidence that Nigeria exercised any voting rights or authorized any representative to act at a corporate meeting.

(12) Hester argues that documents generated during the dispute between NGPC and Cross River over control of the Bansara site after Hester's termination establish:

> (i) that assets held by NGPC were property of Nigeria; and
> (ii) that Nigeria intervened on behalf of NGPC, its alter ego, in negotiations between NGPC and Cross River as to use of the Bansara site.

Hester cites the following documents:

*Exhibit D–163:* April 25, 1984 letter from NGPC to the Federal Ministry of Agriculture:

> I have instructed NGPC Staff to avoid confrontation and peacefully hand over Federal Military Government assets in Bansara to Cross River State officials.

No witness identified the government assets and Oyakhilome testified that the only asset NGPC turned over to Cross River was the farm land owned by Nigeria and used under a certificate of occupancy. He further testified that NGPC moved all of its assets, except one aircraft, from the Bansara site in 1984. *See* Exhibit D–172.

*Exhibit D–164:* April 30, 1984 letter from Federal Ministry of Agriculture to NGPC:

> [T]here is no need for you to hand-over assets of the Bansara Rice Farms to the Cross River State Government.

The defendants quote the following excerpt:

> I am also to inform you that we were assured by the representative of the Cross River State Ministry of Agriculture that there will be no interference by that Government with the assets of the NGPC during the one year period that [the new partners] are to use the land for rice-cropping.

*Exhibit D–960:* May 9, 1984 letter from Cross River to the Federal Ministry of Agriculture:

> May I request you to use your good offices to intervene in this matter because we do not want any confrontation between the Cross River State Government and the Federal Government on the matter of Bansara.

The defendants cite a reference in the letter to Nigeria's intercession on Cross River's behalf in asking the general manager of NGPC to cooperate with Cross River in its effort to take advantage of the new cropping season.

The court finds that Exhibits D–163, D–164, and D–960 establish that the Federal Ministry of Agriculture and Cross River, as well as NGPC itself, viewed NGPC as an entity entirely separate from Nigeria. In any case, the period of the parties' correspondence in question is not relevant and, thus, Nigeria's intervention in the dispute between Cross River and NGPC in 1984 after Hester's termination as technical partner has no bearing on the agency issue in this action.

(13) Hester argues that Nigeria participated in the day-to-day operations of NGPC through the Federal Ministries of Agriculture and Finance with regard to financing

of the Bansara project. Hester cites the following exhibits:

*Exhibit P–145:* NGPC's notice of Hester's request for a letter of intent to guarantee an off-shore loan.

*Exhibits P–111, P–117:* Hester's and NGPC's request for a reply from Nigeria advising of its choice of financing alternatives offered by Export Import Bank.

*Exhibit P–136:* NGPC's request for immediate action as to the letter of intent and government guarantee for the off-shore loan.

*Exhibit D–952:* Hester's request for a letter of intent presented by the Federal Council of Ministers to the President-in-Council.

*Exhibit D–297:* Request from Federal Ministry of Agriculture for an abridged version of the feasibility study, a letter of intent from Hester to guarantee 40% of the $50,000,000.00 off-shore loan, and a letter of intent from the prospective lender.

Hester alleges that the Federal Ministries of Agriculture and Finance approved Hester's request for a letter of intent. The Federal Ministry of Agriculture forwarded the request to the Federal Ministry of Finance (Exhibits P–136 and P–137) who then forwarded the request to the Federal Counsel of Ministers (Exhibit D–952). The Federal Cabinet had the ultimate authority in issuing a letter of intent. *See* Exhibit D–304 (¶ 3). The court finds that the above-referenced exhibits establish that Nigeria's only involvement with the Bansara project was the receipt and consideration of Hester's request for a letter of intent to guarantee an external loan. John Hester testified that a letter of intent was not part of the 1981 agreement; it was required by potential lenders. Alkali testified that Nigeria was not involved in the daily activities of NGPC and that NGPC is managed by a board of directors which meets regularly and maintains minutes of meetings. In his affidavit (Exhibit 1 to defendants' motions to dismiss) Mashood Adio states that the Federal Ministry of Agriculture exercises general supervisory control over NGPC but Nigeria is not involved in NGPC's day-to-day operation. Exhibits P–148 and P–149 establish that Nigeria had no knowledge of NGPC's dealings in the Bansara project. In response to the request for a letter of intent, the Federal Ministry of Finance made the following inquiry in 1982:

(1) whether Bansara Rice Farms, Ltd. is one of the projects approved for external borrowing in 1982; and

(2) whether NGPC intends to use the twenty million naira approved for its external borrowing entirely for Bansara Rice Farms, Ltd.

*See* Exhibit P–148.

(14) Hester introduced written statements that NGPC represents Nigeria in promoting its agricultural policy:

*Exhibit P–261:* NGPC's brochure submitted to Hester:

Each large scale mechanized farm project will be constituted into a separate commercial company involving NGPC (representing the Federal Government). . . .

*Exhibit P–26* (p. 2, ¶ 10): Articles of Association of Bansara Rice Farms, Ltd. prepared by NGPC:

Federal Government shall mean the Federal Government of Nigeria through National Grains Production Company Limited.

*Exhibit P–117:* Letter from NGPC to the Federal Ministry of Finance:

This project is a joint-venture between [NGPC] representing Federal Government, Cross River State Government and Hester International.

*Exhibit D–158 (8.4):* Minutes of Bansara Rice Farms, Ltd. board meeting: General Manager of NGPC identified NGPC as "the Federal Government Promoter."

*Exhibit D–975* (1.2): 1983 Interim Report entitled "Assistance to the National Grains Production Company Limited." The report states on its face that it was "prepared for the Government of Nigeria by the Food and Agriculture Organization of the United Nations" and "Not Yet Released by Government Concerned":

The designated government counteragency was the National Grains Produc-

tion Company Limited which is a parastatal of the Federal Ministry of Agriculture (FMA).

*Exhibit P–253* (p. 4): April, 1983 U.S. Department of Commerce Overseas Business Reports entitled "Marketing in Nigeria":

[The Federal Government of Nigeria] maintains operational authority over parastatal corporations.

 The defendants concede that NGPC represents the federal government to the extent that all corporate entities represent their shareholders. The court finds that the exhibits do not establish an alter ego or agency relationship between Nigeria and NGPC, with regard to the issue of attribution of liability among entities of a foreign state. The court notes that none of the exhibits were prepared by Nigeria. The Fifth Circuit has held that the actual or apparent authority of a putative agent must be shown by "some manifestations, written or spoken words or conduct, by the principal, communicated either to the agent (actual authority) or to the third party (apparent authority)." *Products Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir.1974).

The court finds that Hester has failed to prove that an agency or alter ego relationship existed between NGPC and Nigeria with regard to the execution and performance of the agreement in dispute. Hester neither alleged nor proved any actions on the part of Cross River which would establish an agency or alter ego relationship with Nigeria. The court further finds that Nigeria is neither a party to the agreement nor bound under any of its terms and that the actions of NGPC and Cross River cannot be attributed to Nigeria. Therefore, Nigeria does not fall within the sovereign immunity exception which requires commercial activity carried on by the defendant foreign state. Accordingly, this action will be dismissed as to Nigeria for lack of subject matter jurisdiction.

### V. NGPC's and Cross River's Motion to Dismiss

NGPC and Cross River moved to dismiss for lack of subject matter jurisdiction, lack of *in personam* jurisdiction, and failure to state a claim upon which relief can be granted. Hester alleges two breaches of the parties' agreement:

(1) NGPC and Cross River, as agents or alter egos of Nigeria, failed to provide a letter of intent to guarantee an external loan in the sum of $50,000,000.00; and

(2) NGPC failed to provide additional interim financing in excess of $10,000,000.00 (10,000,000 naira).

 Under the terms of the agreement, Cross River was not responsible for any financing of the Bansara project. Hester alleges no independent breach or wrongful conduct directly attributable to Cross River. A government instrumentality may be held liable for the acts or omissions of a sovereign upon a showing of an alter ego relationship. *See First National City Bank v. Bancec*, 462 U.S. at 618–19, 629, 103 S.Ct. at 2595–96, 2601, 77 L.Ed.2d at 53–54, 60. Since Cross River did not act as Nigeria's alter ego, this action will be dismissed as to Cross River for failure to state a claim upon which relief can be granted.

 NGPC, not having acted as an alter ego of Nigeria, cannot be liable for the alleged breach of failing to provide a letter of intent. In any case, Hester has no cause of action for failure to issue a letter of intent or to guarantee an off-shore loan. It is undisputed that the letter of intent required by prospective lenders was not a term of the 1981 agreement. The agreement does refer to a government guarantee:

(a) NGPC shall—

. . . .

(iv) procure the necessary finance for on-shore costs of the project in the size, sum and style to be prescribed by the Board of Directors, provided always that the Government of the Federal Republic of Nigeria shall provide adequate security in the form of a guarantee for any such sum of money.

(b) [Hester] shall—

. . . .

(iii)(b) procure external finance to cover the off-shore cost of the project (in the size, sum and style to be prescribed by the Board of Directors) provided always that the Government of the Federal Republic of Nigeria shall provide an adequate security in the form of a guarantee for any such sum of money or cost of equipment made available by the Technical Partners.

The court finds that the guarantee provisions impose conditions upon Hester's and NGPC's obligations to provide financing. Under the general rule of construction, the ordinary meaning governs unless circumstances show that a different meaning applies. *See, e.g., Williams v. Batson,* 186 Miss. 248, 187 So. 236, 238 (1939). The introductory word of the provision in question is "provided" which is defined as "on condition that" and ordinarily used in introducing a proviso or signifying a condition. *Webster's Third New International Dictionary* 1827 (1971 ed.); *Black's Law Dictionary* 1388 (rev. 4th ed. 1968). There is no evidence that the parties intended the word "provided" to have a different meaning. Hester did not contact Nigeria about the guarantee or letter of intent until February, 1982. *See* Exhibit P–111. Hester had requested NGPC and the Board of Directors of Bansara Rice Farms, Ltd. to obtain a letter of intent from Nigeria.

The court finds that Nigeria, not being a party to the agreement, was not obligated to guarantee any financing for the Bansara project. Thus, failure to provide a letter of intent or guarantee by any of the defendants does not constitute a breach of the 1981 agreement and Hester's claim against NGPC for such failure will be dismissed. The only remaining cause of action lies against NGPC for allegedly failing to provide additional interim financing for the on-shore costs.

## VI. NGPC's Motion to Dismiss for Lack of Subject Matter Jurisdiction

In support of its motion to dismiss for lack of subject matter jurisdiction, NGPC asserts that the sovereign immunity exceptions under the FSIA do not apply in this action. Subject matter jurisdiction under section 1330(a) depends upon a finding that "the foreign state enjoys no immunity from the claim as provided in sections 1605–1607, the listed exceptions to immunity." *Vencedora Oceanica Navigacion, S.A. v. C.N. A.N.,* 730 F.2d at 199. Hester asserts subject matter jurisdiction over NGPC under 28 U.S.C. § 1605(a)(2) which reads:

§ 1605. General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

Commercial activity is defined in 28 U.S.C. § 1603(d) (emphasis added):

(d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. *The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.*

The Fifth Circuit has noted that:

The focus of the exception to immunity recognized in § 1605(a)(2) is not on whether the defendant generally engages in a commercial enterprise or activity . . . it is on whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character.

*Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1379 (5th Cir.1980).

Under the three clauses of section 1605(a)(2), the action must be "based upon"

commercial activity or an act in connection with commercial activity of the defendant foreign state. The remaining claim in this action involves an alleged breach directly attributable to NGPC for failing to provide interim financing for on-shore costs in excess of $10,000,000.00 (10,000,000 naira). NGPC argues that none of the defendants conducted any commercial activity in the United States in connection with the on-shore financing for the Bansara project. John Hester testified that the on-shore financing was to be in the form of a loan to Bansara Rice Farms, Ltd. from local banks or Nigerian institutions. Alkali testified that NGPC sought on-shore financing from local banks in Nigeria in 1981 and 1982.

■ The Fifth Circuit has held that the phrase "based upon" should be broadly construed so as to consider the entire transaction or series of events giving rise to the cause of action. *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1109 (5th Cir.1985). *Callejo* involved the defendant's alleged breach of certificates of deposit by paying in pesos rather than dollars in order to comply with Mexican exchange control regulations. The defendant argued that the action was based upon the regulations which caused the breach. *Id.* at 1109. The court found that the action was based upon the defendant's commercial banking activities in the sale of certificates of deposit and subsequent payments:

> We do not read Section 1605(a)(2)'s 'based upon' requirement, however, to be equivalent merely to a requirement of causation. In most instances, a suit results from a variety of factors; it is no more the result of a single cause than was the Civil War.... [T]he focus should be on the elements of the cause of action itself: Is the gravamen of the complaint a sovereign activity by the defendant?

*Id.* For purposes of the sovereign immunity exception under section 1605(a)(2), the court finds that this action is not limited to NGPC's failure to provide interim financing. This action is "based upon" the 1981 agreement and joint venture to organize and operate the Bansara project.

■ It is not in dispute that the parties intended to operate Bansara Rice Farms as a commercial joint venture for profit. NGPC's brochure states that NGPC was established as a "commercial company" to implement the government's plan to boost food grain production and that each large-scale mechanized farm project would be operated as a "separate commercial company." *See* Exhibit P-261. The 1981 agreement is a commercial document. *See Chisholm & Co. v. Bank of Jamaica*, 643 F.Supp. 1393, 1400 (S.D.Fla.1986) ("[a] contract, implied or otherwise, is inherently commercial, even when the ultimate purpose behind it is government regulation"). In accordance with its financing obligation, NGPC sent funds to the United States through two letters of credit for the purchase of equipment and rice seed. Such activity is of a commercial nature. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 310 (2d Cir.1981) (letters of credit qualify as commercial activity), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). The fact that NGPC and Cross River pursued the Bansara project in furtherance of Nigeria's agricultural development program does not negate the project's commercial nature. *See Meadows v. The Dominican Republic*, 817 F.2d 517, 523 (9th Cir.) (it is irrelevant that the goods or services contracted for are to be used for a public purpose), *cert. denied*, —— U.S. ——, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987); *Chisholm & Co. v. Bank of Jamaica*, 643 F.Supp. at 1400 (citing 28 U.S.C. § 1603(d)) (defendant acting in furtherance of Jamaican Economic Recovery Program under a contract for foreign credit to importers does not affect the commercial nature of the contract).

The first clause of section 1605(a)(2) requires "commercial activity carried on in the United States by the foreign state" which is defined in section 1603(e):

> [C]ommercial activity carried on by such state and having substantial contact with the United States.

The Fifth Circuit has held that a nexus or connection must exist between the cause of

action and the defendant's commercial activities in the United States. *Vencedora Oceanica Navigacion v. C.N.A.N.*, 730 F.2d at 202. The court stated:

> [T]hat [the first] clause cannot mean what it literally says. A literal reading of the clause would require the act complained of to occur in the United States; 'the drafters of the FSIA intended no such niggardly construction.' *Gemini Shipping v. Foreign Trade Organization for Chemicals and Foodstuffs*, 647 F.2d 317, 319 (2d Cir.1981).

*Id.* The court rejected a strict test requiring the commercial activity in the United States to have a direct causal connection to acts giving rise to the claim or to be an element of the plaintiff's cause of action. *Id.* at 200, 202. The court relied on a case involving an action against a foreign sovereign's airline for damages resulting from the airline's delay. *Id.* at 200 (citing *Sugarman v. Aeromexico, Inc.*, 626 F.2d 270, 272–73 (3d Cir.1980)). The court in *Sugarman* found a nexus between the plaintiff's grievance and the defendant's commercial activity in the United States based upon the following facts:

> (1) the delayed flight bound for New York City was the return portion of the plaintiff's round-trip flight, and
>
> (2) the plaintiff's airline tickets were purchased in the United States.

*Sugarman*, 626 F.2d at 272–73.

NGPC argues that its commercial activity in the United States is unrelated to NGPC's alleged breach in failing to provide interim financing and does not meet the nexus test. NGPC asserts the following facts to emphasize its activities in Nigeria:

> (1) the 1981 agreement was negotiated and executed in Nigeria:
>
> (2) NGPC communicated from Nigeria with Hester in the United States;
>
> (3) NGPC, acting through its bank in Nigeria, made funds available to Hester for the purchase of rice seed and equipment in the United States;
>
> (4) Hester and not NGPC obtained confirmation of NGPC's letters of credit in the United States;

> (5) NGPC sought on-shore financing from local banks in Nigeria or Nigerian institutions;
>
> (6) no officials, agents, or representatives of NGPC traveled to the United States for the purpose of discussing or promoting the Bansara project;
>
> (7) NGPC had no control over SGS, a company retained by foreign governments to inspect imported goods; and
>
> (8) NGPC played no part in the SGS inspection in the United States of the equipment purchased for the Bansara project.

Hester asserts the following activities in the United States:

> (1) in September, 1981 Alkali, NGPC's general manager, discussed the Bansara project, particularly the 60/40 split for the external loan guarantee, with John Hester in Birmingham, Alabama; and
>
> (2) NGPC forwarded letters of credit to the United States for the purchase of equipment and rice seed in the United States.

The letters of credit for the purchase of rice seed and equipment in the United States were issued by NGPC pursuant to its on-shore financing obligations. Therefore, the court finds that NGPC's issuance of the letters of credit is directly related to the issue of the extent of NGPC's on-shore financing obligations. The court further finds that Alkali's discussion in the United States about the financing of the Bansara project, regardless of the purpose of his trip, was sufficiently connected with NGPC's alleged breach to meet the nexus test. NGPC's activities fall within the first clause of the commercial activity exception under section 1605(a)(2), and thus NGPC is not immune from this action.

## VII. NGPC's Motion to Dismiss for Lack of Personal Jurisdiction

■ Since the court has subject matter jurisdiction over NGPC and there is no dispute as to proper service of process, the court has statutory personal jurisdiction over NGPC. *See Texas Trading*, 647 F.2d at 308, 313. 28 U.S.C. § 1330(b) reads:

Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.

The court must determine whether the exercise of personal jurisdiction over NGPC comports with the constitutional requirements of the due process clause of the fifth amendment. *See Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344, 1352 (11th Cir.1982); *Texas Trading*, 647 F.2d at 313–14. NGPC's activities in the United States must meet the "minimum contacts" standard established in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed.2d 95 (1945). *Harris Corp.*, 691 F.2d at 1352–53 (citing *Texas Trading*, 647 F.2d at 314). Hester asserts the following contacts of NGPC:

(1) NGPC communicated to Hester through the United States mail pursuant to the Bansara project:

(a) In January, 1981, NGPC mailed to Hester in Mississippi a written description of the overall plan to develop "large scale mechanized and integrated farm projecs each of at least 4,000 hectares (10,000 acres)" in Nigeria (Exhibit P–15);

(b) In a letter dated March 19, 1981, NGPC directed Hester to begin working on the feasibility study (Exhibit P–26, pp. 1–2);

(c) In a letter dated April 9, 1981, NGPC advised Hester that the 1981 agreement had been executed and that it was agreed that the technical partner would present a feasibility study proposal and a breakdown of costs (Exhibit P–30); and

(d) In a letter dated August 31, 1984, Bansara Rice Farms, Ltd. gave Hester notice to forfeit its shares or pay the balance of the called up shares (Exhibit P–188).

(2) NGPC forwarded funds for the purchase of equipment in the United States through a letter of credit advised by an American bank (Exhibit P–72);

(3) NGPC forwarded funds for the purchase of rice seed in the United States through a letter of credit advised by an American Bank (Exhibit D–106);

(4) In September, 1981, Alkali, NGPC's general manager, discussed the Bansara project with Hester in Alabama;

(5) NGPC advanced funds to Hester in Mississippi for services rendered, such as preparation of the feasibility study; and

(6) NGPC mailed a copy of a letter dated February 17, 1982 to Export Import Bank in Washington, D.C. with a note requesting details of a loan offer (Exhibit P–117).

The minimum contacts test involves the following inquiries:

(1) the extent to which NGPC availed itself of the privileges of American law;

(2) the extent to which litigation in the United States would be foreseeable to NGPC;

(3) the inconvenience to NGPC of litigating in the United States; and

(4) the countervailing interests of the United States in hearing the suit.

*Texas Trading*, 647 F.2d at 314.

 NGPC's contacts invoke American law governing banking and insurance industries and the United States mails. *See Hatzlachh Supply Inc. v. Savannah Bank of Nigeria*, 649 F.Supp. 688, 691 (S.D.N.Y. 1986). NGPC negotiated and contracted with Hester, an American corporation, to perform as the technical partner who would procure and ship all necessary equipment and rice seed for the 1981 crop. The court finds that it was foreseeable that Hester would prepare a feasibility study, procure equipment and rice seed, and render other services in the United States and that NGPC's on-shore financing obligation would involve transmitting funds to the United States. Under similar circumstances, litigation in the United States was held to be foreseeable. *E.g., Chisholm & Co. v. Bank of Jamaica*, 643 F.Supp. at 1402 (defendant negotiated for and obtained the services of plaintiff, an American corporation, through the United States mail and phone systems, and agreed to pay plaintiff in the United States). The court finds this

forum not unduly inconvenient in light of commercial air travel and the documentary proof in this action. *See Texas Trading,* 647 F.2d at 315 ("[e]very modern transnational commercial contract presents problems of adjudicatory cost"); *Hatzlachh Supply Inc.,* 649 F.Supp. at 691 (emphasis on documentary proof obviates the need to transport numerous witnesses). The court notes that Hester has an 'interest in obtaining convenient and effective relief.' *Texas Trading,* 647 F.2d at 315 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490, 498 (1980)). In addition, the FSIA demonstrates the interest of the United States in furnishing a forum. *E.g., Texas Trading,* 647 F.2d at 315 ("Congress has passed the FSIA specifically to provide 'access to the courts' "); *Hatzlachh Supply Inc.,* 649 F.Supp. at 691.

NGPC argues that its contacts with this forum rest on a mere fortuity that Hester resides in the United States and are unrelated to the cause of action. The court finds that all of NGPC's contacts involved the agreement in dispute and that its contacts through the issuance of letters of credit are directly related to the alleged breach of its on-shore financing obligation. Therefore, this court has personal jurisdiction over NGPC, in accordance with due process.

### VIII. Alleged Breach of NGPC

Hester alleges that NGPC obligated itself to provide an additional 10,000,000 naira for interim financing of the first 1000 hectares of rice. John Hester conceded that such obligation was not a term of the 1981 agreement. Alkali testified that the agreement obligated NGPC to provide the initial funding for the 1981 rice crop. John Hester testified that NGPC advanced an excess of $2,000,000.00 for equipment, land clearing and rice seed. NGPC advanced a total of approximately $3,000,000.00 for such expenses as Hester's feasibility study, operating expenses, insurance, opening of bank accounts for Bansara Rice Farms, Ltd., and clearance of the equipment and rice seed from port, in addition to the cost of equipment and rice seed. *See* Exhibit

D-473. Hester acknowledged NGPC's contribution. *See* Exhibits D-374 (p. 11), P-5, and P-6. It is not in dispute that NGPC fully performed its on-shore financing duty under the 1981 agreement.

However, Hester alleges that NGPC subsequently agreed to an interim financing obligation. *See* Exhibit D-107 (board paper presented by John Hester to Bansara Rice Farms, Ltd.). In October, 1981, Hester requested an additional 10,000,000 naira. *See* Exhibit P-202 (5.2). NGPC argues that there is no evidence that it agreed to any amendment to the 1981 agreement. Alkali testified that Hester represented to NGPC and Cross River that the equipment purchased by NGPC under the August, 1981 letter of credit would be sufficient for cropping the first 1000 hectares. *See* Exhibit D-104. Yet, Hester requested an amendment to NGPC's letter of credit in November, 1981. *See* Exhibit P-89. Alkali further testified that NGPC refused to advance any additional money for equipment until Hester performed its obligations under the 1981 agreement. John Hester testified that Hester did not plant any rice because it had no way of irrigating, harvesting, storing, or processing the rice. Under the terms of the 1981 agreement, Hester was not obligated to irrigate, harvest, store, or process the rice; Hester was obligated to plant the 1981 rice crop and to mobilize the resources necessary to plant the 1981 crop. *See* Exhibit P-1. John Hester's list of equipment and proposed amendment do not itemize any harvesters, fertilizers, or irrigation equipment. *See* Exhibits D-104 and P-89.

■ NGPC argues that any obligation it may have had to provide interim financing was excused by Hester's repeated refusals to pay its cash equity contribution to Bansara Rice Farms, Ltd. or to plant the rice. *See Matheney v. McClain,* 161 So.2d 516, 519-20 (Miss.1964). It is undisputed that Hester owed and failed to fully pay $100,000.00 in cash for its equity share (testimony of John Hester and Alkali). *See* Exhibits P-202 (4.3), P-209 (¶ 7), D-110, D-304 (¶ 6), and D-346 (5.2). The court has serious doubt that Hester gave considera-

tion for an additional duty on the part of NGPC to provide interim on-shore financing. However, assuming arguendo that NGPC was obligated to provide interim financing, the court finds that NGPC did attempt to obtain additional financing for the on-shore costs of the Bansara project from Nigerian banks in 1981 and 1982 (Exhibits P–6 and D–374, p. 11) but was unable to secure a loan (Alkali's testimony). Alkali testified that banks would not consider NCPC's loan application until Bansara Rice Farms, Ltd. was fully capitalized and every partner had paid its equity. *See* Exhibit D–192 (p. 1). Therefore, NGPC cannot be held liable for failure to provide interim financing on the grounds that NGPC had no such obligation or that Hester's nonpayment of its equity share prevented NGPC from obtaining interim financing.

With the exception of Hester's claim against NGPC for interim financing, the court finds for the defendants on questions of law. If this action were decided on the merits of the case, the court, after due consideration of all the evidence presented during the week-long trial, would find for the defendants. Although the 1981 agreement is silent as to the extent of the government guarantee in dispute, the evidence shows that Hester subsequently agreed to provide 40% of the guarantee for off-shore financing. The project financial summary and synopsis of the feasibility study prepared by Hester reflect the 60/40 split. *See* Exhibits P–5 and 6. In addition, John Hester told Alkali that Hester would proceed with the project with an understanding of the 60/40 split (John Hester's testimony). Yet, John Hester testified that the letter of intent requested by Hester would have required Nigeria to guarantee 100% of the proposed $50,000,000.00 external loan. *See* Exhibit P–209 (¶ 4). Rene Fischer, Hester's financial consultant, testified that Hester was not willing or able to guarantee 40% of the loan and would not have been able to procure external financing for the Bansara project with a letter of intent from Nigeria to guarantee only 60%. In fact, Hester never obtained an official loan offer or firm commitment of external financing for the Bansara project (John Hester's testimony). *See* Exhibit P–166

(¶ 6). The evidence also shows that Hester did not fulfill its contractual obligations. Hester did not clear the entire 1000 hectares for the 1981 rice crop and wholly failed to plant the rice seed purchased in 1981 (John Hester's testimony). If decided on the merits, the court would find for the defendants on the issue of the letter of intent to guarantee an off-shore loan.

IX. Conclusion

For the foregoing reasons, the court makes the following rulings:

(1) the defendants' motion to strike the plaintiff's initial brief on the jurisdictional issues will be denied;

(2) Nigeria's motion to dismiss for lack of subject matter jurisdiction will be granted;

(3) Cross River's motion to dismiss for failure to state a claim upon which relief can be granted will be granted;

(4) NGPC's motion to dismiss the plaintiff's claim as to the letter of intent to guarantee an off-shore loan will be granted; and

(5) the remaining claim against NGPC for failure to provide interim on-shore financing will be decided in favor of NGPC.

The plaintiff's motion to reconsider the court's ruling on the damages issue is moot.

An order will issue accordingly.